**GOLD DUST CORPORATION v. HOFFEN-
BERG et al.**

No. 141.

Circuit Court of Appeals, Second Circuit.
Jan. 4, 1937.

W. Lee Helms, of New York City, for
appellant.

Jack G. Lubelle, of Rochester, N. Y.,
for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellant has a registered trade-mark "Gold Dust" No. 60,075 of January 29, 1907. It has used the mark since 1887 as applied to washing powder and allied goods for the household, specifically moppets. Appellees are charged with infringement in selling and offering for sale household polish preparations, floor wax, and polishing mops bearing the marking "Silver Dust." Appellant claims an ownership of "Silver Dust" as a marking used by it as ancillary to "Gold Dust" and also ownership in its registration No. 287,792 of October 6, 1931, as applied to soap products.

Appellee Morris Hoffenberg admitted the use of the marking "A-1 Silver Dust Mop" and the floor wax of "A-1 Silver Dust Mop Wax." The court found that soap powder and floor wax are different commodities and that appellant's product does not contain silver dust as an ingredient; that the mark "Gold Dust" is not infringed by "Silver Dust" because the latter is descriptively used; that there was no passing or palming off by appellees; and that "Silver Dust" does not conflict with "Gold Dust."

■ "Silver Dust" is a commodity and distinctly descriptive of a manufactured wax sold by the appellees. A name descriptive of an article of trade, of its qualities, ingredients, and characteristics, may not be employed as a trade-mark and its exclusive use be entitled to legal protection. Delaware & H. Canal Co. v. Clark, 13 Wall. (80 U.S.) 311, 20 L.Ed. 581; Brooten v. Oregon Kelp Ore Products Co., 24 F.(2d) 496 (C. C.A.9); Wrigley, Jr., & Co. v. Grove Co., 183 F. 99 (C.C.A.2). Compare Western Oil Refining Co. v. Jones (C.C.A.) 27 F. (2d) 205; Potter Drug & Chem. Corporation v. Miller, 75 F. 656 (C.C.Pa.).

■ "Silver Dust" is an ingredient of appellees' wax which is produced from hyposludge reclaimed from junk. It does change its form in a cracking process, but this does not alter its being such ingredient. Aside from this fact, however, appellant had not already appropriated "Silver Dust" at the time the appellees were using its name. There is ample evidence of the sale of "Silver Dust" before appellant registered its trade-mark. The use of a mark claimed as a trade-mark is founded on priority of appropriation; the claim of a trade-mark must

be based on sufficient user accompanied by an "intention to acquire title" in the mark, Kohler Mfg. Co. v. Beeshore, 59 F. 572, 576 (C.C.A.3), with respect to like articles of production (Columbia Mill Co. v. Alcorn, 150 U.S. 460, 14 S.Ct. 151, 37 L.Ed. 1144).

■ "Infringement of a trade-mark consists in the unauthorized use or colorable imitation of the mark already appropriated by another, upon goods of a similar class." Block v. Jung Arch Brace Co., 300 F. 308, 309 (C.C.A.6), certiorari denied 266 U.S. 620, 45 S.Ct. 99, 69 L.Ed. 472. None of the articles sold by the appellees, particularly "Silver Dust" wax, was similar to the appellant's product sold as "Silver Dust" washing powder. Appellant's product is sold in a cardboard box as a powder; appellees' "Silver Dust" wax is sold in a can as a liquid floor wax. It is not an infringement for one to use a trade-mark upon a different class of goods from that to which the prior user applied it (provided the difference is so great as to prevent confusion), even if the prior user of the mark is thus prevented from subsequently enlarging his use to include the same class to which the second user had affixed the mark. Pease v. Scott County Milling Co., 5 F.(2d) 524 (D. C.Mo.). Moreover, the claim of infringement of the trade-mark "Silver Dust" was abandoned at the trial below.

■ But the appellant argues that, because of its trade-mark "Gold Dust," the appellees cannot appropriate the trade-mark "Silver Dust." With this contention must be weighed the fact that in 1931 the appellant registered the name "Silver Dust," although it had been previously used and appropriated by the appellees. Appellees have been in business since 1922 and used their mark "Silver Dust" from that time until the commencement of the suit, with no apparent effort made by the appellant to stop them, based on the claim that it was an infringement of the trade-mark "Gold Dust." Cf. White Rock Mineral Springs Co. v. Akron B. & C. S. Co., 299 F. 775 (C.C.A.6). Using the term "Silver Dust" does not remind one of "Gold Dust," and particularly is this true of a product of a different classification.

There is no showing of unfair competition. Howe Scale Co. v. Wyckoff, S. & B., 198 U.S. 118, 25 S.Ct. 609, 49 L.Ed. 972. Without identity in names respectively appropriated for use, there must be a similarity which causes a confusion of goods, marks, or origin in the minds of the

public to restrain an alleged infringer. Block v. Jung Arch Brace Co., supra; Wells v. Ceylon Perfume Co., 105 F. 621 (C.C.N.Y.). There could be no such confusion of the appellant's article of powder in boxes with appellees' article of liquid in cans nor could there be as to the mops, one a floor mop and the other a sink mop. The evidence offered by the appellant does not warrant any finding of an attempt to pass or palm off the goods of the appellees for that of the appellant nor of an intent in the appellees to cause a misapprehension of origin.

 The court below granted attorney's fees of $750 on the grounds that gross and willful charges had been made but were unsustained and that the action had not been prosecuted as promptly and vigorously as would be expected of a bona fide action based upon substantial grounds and that this was partly shown by the fact that the appellant withdrew its claim of infringement of the "Silver Dust" trade-mark, relying upon the "Gold Dust" trade-mark as a basis for infringement. In making this allowance the court relied on Guardian Trust Co. v. Kansas City Southern Ry. Co. (C.C.A.) 28 F.(2d) 233, reversed (on other grounds) 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659.

It is a general rule in federal equity practice that the giving or withholding of costs, their apportionment and division, is a matter of discretion. Stallo v. Wagner, 245 F. 636 (C.C.A.2); Bliss v. Anaconda Copper Mining Co., 167 F. 1024 (C.C. Mont.); Kell v. Trenchard, 146 F. 245 (C. C.A.4). But the allowance of costs has with practical uniformity been restricted to those authorized by the fee bill (R.S. § 983; 28 U.S.C.A. § 830), or by some other statutory provision. Oelrichs v. Spain, 15 Wall. 211, 21 L.Ed. 43; Marks v. Leo Feist, Inc., 8 F. (2d) 460 (C.C.A.2); McIntosh v. Ward, 159 F. 66 (C.C.A.7). Compare Niday v. Graef, 279 F. 941 (C.C.A.9). Where no federal statute is applicable, the federal courts resort to the statutes and the practice of the state. Ex parte Peterson, 253 U.S. 300, 317, 40 S.Ct. 543, 549, 64 L.Ed. 919. See Gleckman v. United States, 80 F.(2d) 394 (C.C.A.8).

 Both in federal and state courts it is established in actions at law and almost uniformly settled in equity cases that counsel fees may not be recovered. Oelrichs v. Spain, supra. See Marks v. Leo Feist. Inc.,

supra. Exceptions are made if authorized by statute (see, for example, 1 N.J.Comp. Stat.1910, p. 445, § 91; Diocese v. Toman [N.J.Ch.] 70 A. 881), as where costs are made recoverable in specific types of cases. This has been done as to actions brought to enforce orders of the Interstate Commerce Commission (49 U.S.C.A. § 16 (2), or in suits for infringement of the Copyright Law (17 U.S.C.A. § 40), or in actions for violations of the anti-trust laws (15 U.S. C.A. § 15).

 Counsel fees are granted where there is a fund in the hands of the court, as where a creditor's bill is filed and a fund brought into court out of which an allowance is made to the party who pursued the action for himself and others. Central Trust Co. of New York v. United States Light & Heating Co., 233 F. 420 (C.C.A.2). The theory, among others, is that the party reimbursed has acted as a "trustee" in the "common interest." Trustees v. Greenough, 105 U.S. 527, 532, 26 L.Ed. 1157. In reality this is not an allowance of costs which properly signify a payment by the adverse party.

In Guardian Trust Co. v. Kansas City Southern Ry. Co., supra, such a fund existed and was brought into the constructive possession of the court. Out of it creditors were entitled to be paid. The action, a creditor's suit, was brought against a pledgee attacking the pledgor's title to the property and the validity of the debt due the pledgee. The court dealt with the situation presented to it as one raising the question of the power of a federal equity court to allow counsel fees as costs in its discretion. It concluded that the power existed and granted the allowance against a party who was found to have vexatiously instituted a groundless litigation. The Supreme Court, in reversing on other grounds (281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659), declined to pass upon the question of the existence of this power.

In Marks v. Leo Feist, Inc., supra, this court awarded counsel fees pursuant to the provision of the Copyright Act (35 Stat. 1084, § 40 [17 U.S.C.A. § 40]). It stated, however, as a general rule, that: "Each party to a litigation must pay his own counsel fees, no matter how unjust the litigation may have been or how great may have been the expensa litis."

 Aside from any question of power, therefore, we are committed to the settled

454

equity practice outlined above that counsel fees will not usually be allowed against an unsuccessful litigant.

The decree will be modified by striking out the allowance of attorney's fees, and, as modified, affirmed.

Decree modified.