## GOLD SEAL IMPORTERS, Inc., v. MORRIS WHITE FASHIONS, Inc.

District Court, S. D. New York.

April 11, 1945.

---

[1] No opinion for publication.

Dean, Fairbank & Hirsch, of New York City (Morris Hirsch, of New York City, of counsel), for plaintiff.

Archibald Palmer, of New York City, for defendant.

BRIGHT, District Judge.

This matter comes up on a motion to confirm the report of the special master, subject to objections filed by both parties. The action was to restrain an alleged infringement of a design patent relating to ladies' handbags. The action was commenced on March 20, 1941, and a preliminary injunction was granted to plaintiff on April 5, 1941, restraining defendant from making, using, selling or advertising handbags embodying the invention as exemplified by plaintiff's handbag, subject to the filing by plaintiff of a bond in the sum of $5,000. That bond was filed, and was conditioned that plaintiff would pay to defendant such costs and damages, not exceeding the sum mentioned, as may be incurred or suffered by defendant if the court decides that it has been wrongfully enjoined or restrained. Upon a trial before Judge Galston the complaint was dismissed. 38 F.Supp. 890. The interlocutory judgment, granted on June 12, 1941, provided, among other things, for the appointment of Harry A. Yerkes, Jr., to assess the defendant's damages and costs as may be found to have been incurred or suffered on account of the injunction, and awarded defendant taxable costs and disbursements and "such other costs and disbursements incident to the above assessment, the claims of stenographic fees and master's fees, if any, to be paid by plaintiff". That judgment was affirmed on appeal on December 23, 1941 (124 F.2d 141), the mandate thereon being entered on February 3, 1942, and providing that the special master proceed with the hearings. The first hearing was fixed for February 18, 1942 but did not proceed, and more than a year elapsed without any date being thereafter fixed. On April 1, 1943, plaintiff moved, because of the delay, for an order that final judgment of dismissal be entered and that the bond of $5,000 be cancelled. On April 15, 1943, an order was entered granting that motion unless defendant brought on the accounting for hearing before the special master within ten days. Hearings were thereafter held on April 20, 30, May 7, 14, 26, 27, June 18, 29 and 30, 1943. On July 14, 1943, plaintiff moved for an order that defendant post a surety bond in the sum of $3,000 as security for costs in the accounting proceeding, and in default thereof, that the proceeding be dismissed, alleging that on the face of the proceedings as they appeared from the extended record (the stenographic record then consisted of 935 pages), defendant's counsel was acting in bad faith and in such a manner as to unreasonably annoy, embarrass and oppress the plaintiff. That motion was granted by Judge Galston to the extent of requiring defendant to post a surety bond in the amount of $2,000 as security for costs in the pending accounting proceedings. Upon the posting of the bond, it was ordered that the proceedings

be continued expeditiously without adjournment or delay. Judge Galston wrote: "If the conduct of counsel continues obstructive, the master will so report for such further relief as may be necessary in the premises." The order upon the motion, however, was not entered until January 22, 1944, and the bond was thereafter filed. Hearings were then resumed on February 1 and closed on February 2, 1944.

As permitted by Rule 53(d) (3), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the master required defendant to submit to him an account of the damages claimed to have been sustained, and in accordance with that request, defendant made claim for damages under five headings, as follows:

| | |
|---|---:|
| *I. Loss on ornaments for Exhibit 1 bags*<br>Cost of unused ornaments purchased for the Exhibit 1 bags | $ 1,350.00 |
| *II. Loss on sale of Exhibit 1 bags*<br>Loss of $7.50 per dozen on sale of 20 gross of Exhibit 1 bags, originally priced at $22.50 per dozen and sold at $15. per dozen after injunction was vacated. | 1,800.00 |
| *III. Loss of leather cut for Exhibit 1 bags*<br>50% wastage on 30,000 feet of leather costing $3,900.-00 and cut for 60 gross of the Exhibit 1 bags, and recut for other style bags | 1,950.00 |
| *IV. Loss on linings cut for Exhibit 1 bags*<br>50% wastage on 3,000 yards of lining costing $810.00 and cut for 60 gross of the Exhibit 1 bags, and recut for other style bags | 405.00 |
| *V. Loss on sale of substitute bags*<br>Loss of $7.50 per dozen on sale of 309–5/6 gross of substitute bags manufactured from leather purchased for the Exhibit 1 bags | 27,915.00 |
| Total | $33,420.00 |

■ The special master found that the only damage proven to have been sustained by the defendant was the sum of $115.50, its actual loss on sales of the bag in question on hand at the date of the injunction and sold after the vacating thereof. He also found that as to all of the other items, the defendant had failed to sustain the burden of proof to show any damage.

I have read all of the testimony and examined all of the exhibits, and it will serve no useful purpose to review any of them at length. They have been capably and completely discussed in the special master's report, which, in accordance with Rule 53(e) (2) I am bound to accept unless clearly erroneous.

Defendant, of course, knew from and after March 20, 1941, when the action was commenced, that it had a lawsuit on its hands. Notwithstanding this, it destroyed its inventory of bags and stock on hand taken at or about the time the injunction was granted for the inspection of the plaintiff. It did not produce its orders for leather, as requested by the special master. It did not take or produce any inventory or accurate list of ornaments on hand after the injunction. It produced its records and sales for April, May and July 1941, but not for the month of June, in which month the injunction was lifted. It says that the bags sold during that month were white bags and had nothing to do with the one in question, but it could still have produced its sales for that month of all bags and thus avoided the charge and suspicion attendant upon its failure to do so. And its attention was called to the possibility of such a charge. It claimed to have had orders for 300 gross of bags in question, but it destroyed all of such orders, and that too during the very existence of this lawsuit and even after the injunction was vacated. It states that it customarily destroyed such orders after six months, or six months after the close of the particular season in which the bags were made for sale. But when the orders which might have furnished evidence in this matter were destroyed, this case was pending. An injunction had been granted and vacated and a special master appointed. It was testified that defendant started taking orders in February. The action was commenced on March 20, and the injunction was vacated on June 12, the special master was appointed, and a date set for the first hearing, within the six month period. Time and again during the course of the hearing defendant was advised that the master did

not care to rely solely upon recollection testimony of defendant's officers and one employee, and was requested to produce documentary evidence substantiating its claims. It is obvious that all of the testimony adduced was largely the testimony from memory of events and stocks of merchandise existing or claimed to exist, two, three or four years before the testimony was given. And the tabulations of quantities, etc., introduced were not proven by the persons who prepared them or who had first knowledge, by count, inventory or otherwise, of the facts purporting to be set forth in such tabulation.

Under the circumstances, it does not seem strange that the special master refused to credit the testimony given or to make any award in reliance thereon. Each subdivision of the claim has received his careful and accurate consideration, and the statements in his report seem to be fully borne out by the testimony and exhibits as I read them. Further discussion would be pure repetition.

The remaining question is, who shall pay the expense of the reference. As to this the master makes no recommendation. Here we are presented with a record of over 1,000 pages of testimony, costing $771.25, and the master asks for an allowance of $2,000 for his services, and $37.50 for his disbursements for use of hearing rooms. There were sessions on eleven days, consuming about seven and a half actual days, and other time spent in reading and rereading the testimony, briefs and exhibits which I can readily believe consumed more than a week additional. The record shows extensive colloquy, not only between counsel and the master, but also between counsel; and page after page of unnecessary examination, cross-examination and questioning, in all of which both sides more or less indulged. The action of the court on two applications which were made prior to the closing of the reference, is indicative of what transpired, and where the fault largely lies. The actual award of $115.50 after such a long period of time, and the taking of so much testimony and exhibits, quite clearly shows that the reference was not really justified, that de-fendant was unable to prove damages of any large amount, and, it might be said, deliberately paid no attention to repeated statements of the referee as to what he desired in order to base a finding of damage.

■ Rule 53(a) (b) of the Rules of Civil Procedure provides that a reference to a master shall be the exception and not the rule, and that the compensation to be allowed to him, when fixed by the court, shall be charged upon such parties as the court may direct. This rule obviously carries out prior holdings of the court upon the subject. It was long ago decided that where a master's report is confirmed by the court and awards nominal damages, the costs of the reference, including the master's fees, should be taxed against the party who obtained the appointment of the master. Coxe, J., in Everest v. Buffalo Lubricating Oil Co., C.C.N.Y., 31 F. 742, dismissed per stipulation 131 U.S. 449, 9 S.Ct. 804, 33 L.Ed. 215. That principle was applied by Judge Lacombe in Hohorst v. Hamburg-American Packet Co., C.C.N.Y., 76 F. 472; by Judge Adams in Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 8 Cir., 183 F. 314–318, reversed on other grounds 235 U.S. 641, 35 S.Ct. 221, 59 L. Ed. 398; by Judge Swan in Salvage Process Corporation v. Acme Tank Corporation, 2 Cir., 104 F.2d 105–107; and by Judge Evans in Adventures in Good Eating v. Best Places to Eat, 7 Cir., 131 F.2d 809–814.

■ Under the circumstances, therefore, the report of the special master will be confirmed; he will be allowed $1,500 for his fees as such; and the expense of the reference, which shall include the amount allowed to the special master, the $771.25 for stenographic fees and the $37.50 for the master's disbursements, shall be paid one-third by the plaintiff and the other two-thirds by the defendant. Plaintiff should not escape scot free in view of its unjustifiable preliminary injunction. As required by the interlocutory judgment the master's fees and expenses and stenographic fees shall, in the first instance, be paid by plaintiff, subject to taxation as now allocated, in the final judgment to be entered, and which shall be settled on notice.