**AUGSTEIN et al. v. SAKS et al.**

No. 25450–S.

District Court, N. D. California, S. D.

July 10, 1946.

548

Goldstein, Barceloux & Goldstein, and J. Oscar Goldstein, all of Chico, Cal., for plaintiffs.

Boyken, Mohler & Beckley, and A. W. Boyken, all of San Francisco, Cal., for defendants.

ST. SURE, District Judge.

This is a suit in equity by which plaintiffs seek, primarily, injunctive relief against infringement of a trade-mark and, by inference, charge unfair competition.

Disregarding the chronology of allegations, the complaint alleges in substance that plaintiffs, Adolph M. Augstein and Egmont A. Egerer, are copartners engaged in the manufacture and sale, in interstate commerce, of women's wearing apparel including suits, dresses and sportswear, under the firm name and style of S. Augstein & Co. and have their principal place of business in New York City; that defendants, George Saks and Irving Kay, are copartners doing business as Saks & Kay and have their principal place of business in San Francisco; that this action arises under the trade-mark laws of the United States; that from the year 1920 to August 1942, plaintiffs' predecessors in interest, i.e., a family partnership known as S. Augstein & Co., had used in interstate commerce throughout the United States the trademark "Sacony", which was coined from letters of the firm name and the location of its business; that on October 7, 1941, the trade-mark was duly registered in the United States Patent Office and numbered therein 390-794; that on August 1, 1942, the plaintiffs' partnership was created and that thereafter the trade-mark was assigned to plaintiffs; that the trade-mark "Sacony" is valid and subsisting and that plaintiffs are the sole owners thereof; that plaintiffs' products and those of their predecessor in interest have been extensively advertised and sold in retail stores throughout the United States, including stores in San Francisco, under their trade name Sacony, which name has long identified and distinguished plaintiffs' merchandise from that of all other merchandise of the same class and type; that the name with the legend "Reg. U. S. Pat. Off." was affixed to all of plaintiffs' products; that since about July 1945 defendants, with full knowledge of plaintiffs' trade-mark and without plaintiffs' license or consent, have advertised and sold in interstate commerce, ladies' suits and other garments of the same descriptive properties and of a type and character similar to garments sold by plaintiffs under the trade-mark "Saxony"; that Saxony is a colorable imitation of Sacony; that as a result of defendants' use on their products of the trade-mark Saxony, retail merchants throughout the United States are enabled to and do substitute and pass off defendants' products for those of plaintiffs, and to the plaintiffs great damage and loss; that unless restrained defendants will continue to infringe plaintiffs' trade-mark to plaintiffs' irreparable

damage and injury. Prayer was for temporary and permanent injunction, accounting, damages and costs.

For lack of knowledge or information sufficient to form a belief, defendants denied all the material allegations of the complaint except the registration of plaintiffs' trade-mark and their own partnership which were admitted. The answer alleged that defendants had since July 1945 advertised and sold in interstate commerce and otherwise, women's tailored suits and coats under the trade-mark "Saxony Of California" without the consent of or license so to do from plaintiffs. As a separate defense the answer alleged that the complaint failed to state a claim for which relief can be granted. This defense was not pressed and trial was had on the merits.

The evidence is clear as to the long use of plaintiffs' trade name Sacony prior to its registration, and that plaintiffs and their predecessors had a national business of no mean proportions. Retail merchants selling their wares number not less than five in San Francisco.

■ Infringement of a trade-mark consists of the unauthorized use of an identical mark, or a colorable imitation of a mark which has already been appropriated by another, by affixing such a mark to goods of the same or a similar class. Block v. Jung Arch Brace Co., 6 Cir., 300 F. 308, 309; Gold Dust Corp. v. Hoffenberg, 2 Cir., 87 F.2d 451, 452. The crucial test of infringement is in the similarity of form, appearance, spelling or sound. Nu-Enamel Corp. v. Armstrong Paint & Varnish Works, 7 Cir., 95 F.2d 448; Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618, 623. To this is added the question of whether or not the similarity is sufficient to mislead or deceive the average, prudent or unwary customer into a belief that the goods of one manufacturer are those of another. Kresge Co. v. Winget Kickernick Co., 8 Cir., 96 F.2d 978; Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774, 775; Esso, Inc., v. Standard Oil Co., 8 Cir., 98 F.2d 1, in which the trade-mark involved was Soco.

In the instant case there is neither allegation nor proof that the trade-mark Saxony of California misled the public. The nearest approach to such an allegation was that retail merchants were enabled to and did substitute defendants' merchandise for that of plaintiffs, which would be unfair competition, but there was no substantial evidence tending to prove even that allegation. Whether retail merchants who, it is to be presumed know the manufacturers with whom they deal, could be classified as the "purchasing public" is a question which need not be discussed or decided.

■ The first and most reliable test of alleged infringement is investigation and comparison of the trade-marks involved. Plaintiffs' trade-mark consists of the single word "Sacony", in practically vertical script, with the letters so out of alignment as not to conform to any geometrical line or curve. It is admittedly a coined word without dictionary recordation or definition. It is in fact a trade name, a symbol. The authorities are unanimous in the statement that the sole purpose of a trade-mark or a trade name is to identify the goods, wares and merchandise to which it is affixed or imprinted as the wares of a certain manufacturer. Sacony has served that purpose for more than 25 years.

Defendants' trade -mark is not the single word "Saxony" as alleged in the complaint and as invariably referred to by plaintiffs' counsel during the trial. It is a three word, two line trade-mark. The word Saxony appears alone in clear, sizeable Spencerian script on an oblique alignment, below which and well to the right of the center, in equally clear and only slightly smaller script, are the words "Of California." Saxony is a geographical term and has a secondary meaning when associated with wool. Thus in spelling, form and appearance the two trade-marks are markedly dissimilar.

Now as to sound, that is, pronunciation: Common knowledge suggests if it does not warrant a conclusion, that few persons, if anyone, would pronounce Sacony by dividing the word into two instead of three syllables, i. e. SAC-ony and emphasize the first. One of plaintiffs was asked which was the correct pronunciation, SaCOny, or SACony, and his answer was that the latter was "the accepted pronunciation". A

second witness, who was contact representative of plaintiffs among its 800 customers throughout the United States, testified that throughout the East where Standard Oil Company's trade names are familiar, "you will hear" the accent on the second syllable i. e. SaCOny, but that customers pronounced it "both ways". A third witness in testifying pronounced Sacony "both ways" and when asked which was correct, his answer was that the pronunciations were interchangeable. This is not satisfactory evidence that plaintiffs had always, and that their customers generally, pronounced the trade name SACony. Nor does it seem logical that anyone familiar or unfamiliar with plaintiffs' trade-mark would naturally pronounce it SACony. It is difficult to repel a suspicion that such emphasis as has been placed on accenting the SAC, if any, was recent and for a self-serving purpose.

Moreover, there is no evidence to support the allegation that Sacony had acquired a (primary) meaning "throughout the United States". The most that the evidence would warrant is an inference that plaintiffs' customers—that is some retail merchants and some of their employees throughout the United States—were aware of its meaning. There is neither allegation nor proof that Sacony had acquired a secondary meaning, i. e., was in the same category as Standard Oil or other equally or less well known names. To rationalize: If the meaning of Sacony were generally understood the last syllable (n-y for New York) indicated that S. Augstein was a New York manufacturer, which would immediately distinguish their products and name from those of Saks & Kay and Saxony of California. Such evidence as was offered to show confusion was very general, vague and unsatisfactory.

It follows from the foregoing that I am of the opinion that there is no infringement. This view obviates the necessity of discussing other points on which decision might have been predicated.

Judgment will be entered for defendants. Counsel may submit findings of fact and conclusions of law.

It is so ordered.