## GENERAL MOTORS CORPORATION et al. v. CIRCULATORS & DEVICES MFG. CORPORATION.

District Court, S. D. New York.
July 29, 1946.

See also 38 F.Supp. 459.

Cooper, Kerr & Dunham, of New York City (Drury W. Cooper, Thomas J. Byrne, and John N. Cooper, all of New York City, of counsel), for plaintiffs.

Armand E. Lackenbach, of New York City, for defendant.

LEIBELL, District Judge.

The complaint herein, filed January 29, 1940, states a cause of action for unfair competition in the deliberate use by defendant of a trademark on its electric fans which closely resembled plaintiffs' trademark, "Frigidaire." Jurisdiction is based on diversity of citizenship and an amount involved in excess of $3,000. The trial judge directed that an interlocutory decree be entered in favor of plaintiff. In his conclusions of law he provided that plaintiffs shall have "their taxable costs and disbursements of this action, and that they shall have an accounting" of defendant's profits, and that plaintiffs' damages be assessed. The accounting was referred to a Special Master by a provision of the interlocutory decree filed June 13, 1941. On September 7, 1943, an order was entered on consent substituting another Special Master "to continue the conduct of the accounting provided for in the said interlocutory judgment."

■ The accounting before the Special Master was made necessary because of defendant's acts. It was not until November 29, 1945, that defendant, by Exhibit B, admitted that on certain sales it had made a profit of $2,668.85. Under the circumstances the "concession" was too belated to support defendant's contention that the plaintiffs should bear the costs of the reference, including the fee of the Special Master. The Master has requested an allowance of $300.00. It is not objected to and it is a reasonable and proper amount, which should be paid by the plaintiff in the first instance and then taxed as part of plaintiffs' costs against the defendant. Rule 53(a), F.R.C.P., 28 U.S.C.A. following section 723c. Gold Seal Importers v. Morris White Fashions, D.C., 4 F.R.D. 386.

The Special Master made findings of fact and conclusions of law and filed a report setting forth his reasons for deciding (1) that plaintiffs have sustained no damages but (2) are entitled to defendant's profits of $2,668.83 in the sales of defendant's fans that were sold at a profit, plus interest (at 6%) from the date of the commencement of this action, January 29, 1940.

Plaintiffs have filed objections: To the amount of profits allowed, asserting that the proof justified an award of profits in excess of $2,666.85; to the allowance of "additional commissions" in the sum of $3,211.97 as a cost item; to the Master's conclusion that plaintiffs have failed to prove any damages; and to the failure of the Master to allow plaintiffs as items of damages, an accountant's fee of $3,400.88 and a lawyer's charge of $5,225.

The defendant also filed objections: To that part of the Master's findings and conclusions which allowed plaintiffs all the profits on the fans that were sold at a profit, and to the allowance of interest on the amount of said profits from the date this action was commenced.

■ As to plaintiffs' objections, I am satisfied that the record sustains the Master's conclusion that plaintiffs did not prove any damages. There hardly could be any proof that one of defendant's fans was palmed off on a prospective customer for one of plaintiff's "Frigidaires." Plaintiffs lost no business through the sale of defendant's fans. The request that there be considered as part of plaintiff's damages the expense of prosecuting this law suit (accountants' and lawyers' fees) would give to the word "damages" a meaning not intended by the language of the interlocutory decree which described the damages as "all damages which plaintiffs have sustained by reason of such sales constituting unfair competition in trade with plaintiffs." It seems to me that the language used means damage to plaintiffs' business. All that plaintiff was allowed in the interlocutory decree as "disbursements of this action" were the "taxable" disbursements just as they were awarded their "taxable costs." The facts in this case would not justify the award of counsel fees or accountants' fees as an item of plaintiff's damages. Larson, Jr., Co. v. William Wrigley, Jr., 7 Cir., 20 F.2d 830; Gold Dust Corporation v. Hoffenberg, 2 Cir., 87 F.2d 451, at page 453; A. B. Dick Co. v. Marr, D.C., 48 F.Supp. 775, at page 779. The defendant's conduct was not compar-

able with that of the infringer in Aladdin Mfg. Co. v. Mantle Lamp Co., 116 F.2d 708, 717, where the Circuit Court of Appeals, Seventh Circuit, allowed counsel fees on a finding that the infringer's conduct was both wilful and fraudulent.

Defendant's accountant in Exhibit B showed a total of $11,423.95 as commissions paid on the sale of defendant's infringing devices; plaintiffs' accountants showed commissions of $8,211.98 for the same sales. If the Master believed the testimony of defendant's Vice-President, the witness, Brockman, that the commissions of $11,423.95 shown on Exhibit B were "the commissions actually paid and not a percentage arrangement," then the finding that defendant's net profit was $2,666.85 as shown on Exhibit B is correct. It is true that in an earlier part of his testimony, when the witness referred to Exhibit B as showing the actual commissions paid, his lawyer asked if it showed the percentage or the actual commissions and the witness answered "It shows the amount based upon a percentage which we used"; but later his lawyer asked a question in respect to the commission total of $11,423.95, to the effect that it was "actual commissions paid and not a percentage arrangement," to which the witness answered, "That's right." And in answer to questions of the Special Master the witness explained how the commission would be figured, how it varied, and in fact frequently represented what a salesman could get for a fan over and above a certain minimum price fixed by the defendant. In answer to questions of plaintiff's counsel, Brockman said "we used the actual commissions as shown by the records to have been paid"; and that in preparing Exhibit B, "we worked up our own working papers on that." There were about 2,000 sales of the infringing article. Plaintiffs' counsel now complains that the defendant's work sheets were not produced. If he really wanted them badly he could have had the witness Brockman produce them.

Plaintiffs' witness, the accountant, Dalrymple, testified that in his schedules he "used specific commissions as charged to specific invoices whenever they were available" and he "put into the account a pro rata commission where such information was not available."

The Special Master had to make a choice as to which method was more reliable. If he believed Brockman's testimony that his Exhibit B used only the actual commissions paid, then he was justified in finding a net profit of $2,666.68, based on total commissions of $11,423.95 as an expense.

■ The defendant's objections to the Master's report are first that plaintiffs are not entitled to any of defendant's profits because the sales were not attributable to the infringement of plaintiffs' trade-mark. However, the trial court decided that issue of liability. The issue before the Special Master was the extent of the liability, that is, the determination of what infringing sales were made at a profit and the total of the net profit of such sales. The Master found the amount conceded by defendant's Exhibit B, $2,666.68.

■ Defendant's second objection—as to the Master's allowance of interest at 6% from the date of the commencement of the suit—is well taken. Interest should be allowed only from the date of the filing of the Special Master's report. This would be in accordance with the Federal rule (Larson Jr., Co. v. William Wrigley, Jr., Co., 7 Cir., 20 F.2d 830, at page 836) and would be the equitable thing to do in this case. A period of five years has elapsed between the date of the interlocutory decree (June 13, 1941) directing a reference to the first Special Master, who apparently took no action whatsoever, and the date when the second Special Master filed his report, June 13, 1946. This delay cannot be charged to the defendant. The order substituting the second Special Master was dated September 7, 1943. The date of the first hearing under this order was February 17, 1944, at which time the deposition of plaintiffs' accountant was taken. Then the hearing adjourned and was resumed March 3, 1944, when some more of the deposition of the accountant was taken. At the end of the session on March 3, 1944, the hearing was adjourned subject to further notice. The hearing did not resume until November 15, 1945, when an employee of plaintiffs' attorney and the president and the account-

ant of defendant were examined by plaintiff. The next hearing was November 29, 1945, at which time plaintiffs completed their case, and defendant put in all its proof the same day. Plaintiffs' testimony covered 150 pages; the defendant's 58 pages. Plaintiffs and defendant offered 6 exhibits each. Defendant's objection is sustained as to the interest item, and the Master's report will be modified in that respect, so that interest will be allowed on the $2,668.85 only from the date of the filing of the Master's report, June 13, 1946. Let a decree be entered accordingly.