MAIER BREWING COMPANY, a Corp.,
et al., Appellants,

v.

The FLEISCHMANN DISTILLING
CORP., Appellee.

MAIER BREWING COMPANY, a Corp.,
et al., Appellants,

v.

JAMES BUCHANAN & CO., Ltd.,
Appellee.

No. 20748.

United States Court of Appeals
Ninth Circuit.

March 16, 1966.

J. Albert Hutchinson, San Francisco, Cal., for appellants.

Gregory A. Harrison, Richard Haas, Brobeck, Phleger & Harrison, San Francisco, Cal., for appellee.

Before CHAMBERS, BARNES, HAMLEY, JERTBERG, MERRILL, KOELSCH, BROWNING, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge.

Following this court's decision in Fleischmann Distilling Corporation v. Maier Brewing Company, 1963, 314 F.2d 149, the district court entered judgment pursuant to our mandate enjoining Maier Brewing Company from distributing, selling or offering for sale any alcoholic beverage labeled or named with the words "Black & White" not blended and bottled by James Buchanan & Company Limited. The judgment further recited that the plaintiffs (Fleischmann Distilling Corporation and James Buchanan & Company Limited) were entitled to recover from defendants (Maier Brewing Company and Ralphs Grocery Company) a reasonable amount for attorneys' fees and litigation expenses incurred in this suit in the district court, in the United States Court of Appeals, and in the United States Supreme Court, and fixed the time for hearing to determine the amount of such fees and expenses. Thereafter a hearing was held at which evidence on behalf of all parties was received, and the district court, on April 30, 1964, entered an order awarding plaintiffs, as attorneys' fees, the sum of $60,000 and further sums by way of costs. Appellants have now appealed from that order.

Their first appeal, our No. 19,486, was held by us to be premature, the order not being a final judgment. The trial court

then made its certificate, pursuant to 28 U.S.C. § 1292(b), that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. We granted leave to appeal and the matter is now before us for decision on the merits.[1]

It is contended that it was error for the district court to award any amount by way of attorneys' fees and litigation expenses and that, in any event, the amount awarded was excessive and not warranted by the record.

Two decisions of this court appear to support such an award: National Van Lines v. Dean, 9 Cir., 1956, 237 F.2d 688 and Wolfe v. National Lead Co., 9 Cir., 1959, 272 F.2d 867. Wolfe is in point here and relies on National Van Lines, but we are of the opinion that, insofar as these cases can be said to relate to an award of attorneys' fees in an action for trademark infringement under the Lanham Act (15 U.S.C. §§ 1051 ff.) they, or at least Wolfe, should be overruled.

National Van Lines was a case in which the plaintiff asserted three grounds for relief; infringement of a registered service mark, unfair competition, and breach of contract. The first rested upon federal law, the other two upon the law of California and diversity jurisdiction. The trial court entered judgment for the defendant. This court reversed, holding that the findings as to unfair competition were clearly erroneous, confining its decision to that ground, and further holding that monetary damages had not been proved, but that an injunction should issue. The opinion concludes as follows (237 F.2d p. 694):

"We make one exception from the ruling just announced. Since we have found appellee's acts to have been willful and calculated to trade upon appellant's good will, the latter is entitled to recover its actual and reasonable at-

torney's fees incurred in this litigation.[8]

"8. Aladdin Mfg. Co. v. Mantle Lamp Co., 7 Cir., 116 F.2d 708; Admiral Corp. v. Penco, 2 Cir., 203 F.2d 517; Keller Products, Inc. v. Rubber Linings Corp., 7 Cir., 213 F.2d 382, 47 A.L.R.2d 1108."

It will be noted that no consideration was given to whether the award of attorney's fees rested upon state law or upon federal law.

Wolfe cites and follows National. In that case, as here, there were two appeals. The action began as one for a declaratory judgment that Wolfe's use of a trademark did not infringe National Lead Company's registered mark. National Lead counterclaimed for infringement, a federal claim, and for unfair competition, a state claim. Wolfe prevailed in the trial court. We reversed, 9 Cir. 1955, 223 F.2d 195, holding that the mark "was one entitled to full protection both under the rules of the common law and under the federal acts" (p. 200). We relied specifically upon the Lanham Act (15 U.S.C. §§ 1051 ff.) As in National Van Lines, we held that the trial court's findings were clearly erroneous. (p. 201) We further held that Wolfe's "continued use of these names and the passing off of their products thereunder was intentionally false and misleading and done with a purpose on their part of deceiving prospective purchasers." (p. 202) We concluded that there was both trademark infringement and unfair competition under California law. (p. 205) We remanded with directions to dismiss Wolfe's complaint, to grant National Lead an injunction, to take an account of Wolfe's profits, and to determine National Lead's damages.

Thereafter, the trial court took an accounting and entered a judgment for damages and attorney's fees. It made findings as to intentional infringement consistent with the views stated by us in our first opinion. On Wolfe's appeal, we affirmed (272 F.2d 867). As to the

1. The merits were fully argued on the first appeal. We ordered that the matter be submitted, without further argument, upon the briefs and record on file.

award of attorney's fees, we said (p. 873):

> "Finally Wolfe assigns as error the inclusion in the judgment of an allowance to appellee for counsel fees. In the light of the judicial determination that the infringement was deliberate and fraudulent, this allowance was proper. National Van Lines Co. v. Dean, 9 Cir., 1956, 237 F.2d 688, 694."

The course of the present litigation is similar to that in Wolfe. The complaint was based upon both trademark infringement and unfair competition. Judgment was for the defendant Maier. We reversed. Our decision was based solely on the Lanham Act. (See 314 F.2d at 151–152) We said:

> "We cannot conclude but that Maier deliberately adopted the name knowing that Black & White was the name and trademark of Buchanan and they must have done so with some purpose in mind. The only possible purpose could have been to capitalize upon the popularity of the name chosen. This popularity, they must have known, would extend to their product because the public would associate the name Black & White with something old and reliable and meritorious in the way of an alcoholic beverage." (314 F.2d at 157) * * *

> "But when the evidence does show or require the inference that another's name was adopted deliberately with a view to obtain some advantage from the good will, good name, and good trade which another has built up, then the inference of likelihood of confusion is readily drawn, for the very act of the adopter has indicated that he expects confusion and resultant profit." (314 F.2d at 158)

The judgment of the district court, entered pursuant to our mandate, found and concluded as follows: "Without seeking legal advice, and for the purpose of capitalizing upon the popularity of the name thus chosen, defendant Maier deliberately adopted the name 'Black & White' knowing that 'Black & White' was the name and trademark of plaintiff Buchanan, and knowing that this popularity would extend to its product because the public would associate the name 'Black & White' with the long established reliability and meritoriousness of Buchanan's product. Defendants intended to adopt plaintiff Buchanan's 'Black & White' name or mark for the purpose of taking advantage of the aura of good will which surrounded the name, and they deliberately adopted the name with a view to obtaining advantage from the good will, good name and good trade which Buchanan had built up and expecting that there would be confusion and resultant profit. Defendants refused to discontinue their use on beer of the name 'Black & White' upon request made before suit filed, and they have knowingly, wilfully and deliberately infringed the said mark 'Black & White' and plaintiffs' rights therein."

We might distinguish National Van Lines on the ground that it rests upon California law of unfair competition. Wolfe, however, is expressly grounded on the Lanham Act and on National Van Lines, which does not differentiate, so far as attorney's fees are concerned, between the two grounds. Thus Wolfe is authority for the award here made, and it makes National Van Lines an authority on the same question. We must either follow them, limit or overrule them.

█ We start with the long established principle that a successful party cannot, in an ordinary action at law or in equity, recover his attorney's fees incurred in the action, unless such recovery is provided for by statute or contract. It makes no difference whether such a recovery be denominated costs or damages or something else. This has long been the rule in the federal courts,[2] and

2. Arcambel v. Wiseman, 1796, 3 U.S.(3 Dallas) 306, 1 L.Ed. 613; Day v. Woodworth, 1851, 54 U.S.(13 How.) 363, 370–372, 14 L.Ed. 181 (trespass); Teese v. Huntingdon, 1859, 64 U.S.(23 How.) 2, 8–9, 16 L.Ed. 479 (patent infringement); Oelrichs v. Spain, 1872, 82 U.S.(15 Wall.) 211, 230–231, 21 L.Ed. 43 (damages under injunction bond); Flanders v. Tweed, 1872, 82 U.S.(15 Wall.) 450, 452–453, 21

in the courts of California.[3] This court has recognized and applied the rule.[4] And we note particularly that the rule has been applied by the Supreme Court in patent cases. (Teese v. Huntingdon, supra, fn. 2, Philp v. Nock, supra, fn. 2)

The rule is stated in Oelrichs v. Spain, 1872, 82 U.S. (15 Wall.) 211, 231, 21 L.Ed. 43;

"In debt, covenant and assumpsit damages are recovered, but counsel fees are never included. So in equity cases, where there is no injunction bond, only the taxable costs are allowed to the complainants. The same rule is applied to the defendant, however unjust the litigation on the other side, and however large the *expensa litis* to which he may have been subjected. The parties in this respect are upon a footing of equality. There is no fixed standard by which the *honorarium* can be measured. Some counsel demand much more than others. Some clients are willing to pay more than others. More counsel may be employed than are necessary. When both client and counsel know that the fees are to be paid by the other party there is danger of abuse. A reference to a master, or an issue to a jury, might be necessary to ascertain the proper amount, and this grafted litigation might possibly be more animated and protracted than that in the original cause. It would be an office of some delicacy on the part of the court to scale down the charges, as might sometimes be necessary.

"We think the principle of disallowance rests on a solid foundation, and that the opposite rule is forbidden by the analogies of the law and sound public policy."

There is no provision for the recovery of attorney's fees in the Lanham Act. Yet Congress has known how to provide for such a recovery when it wished to do so. It has so provided in patent cases (35 U.S.C. § 285), limiting the right to "exceptional cases." It has made similar provision in the field of copyright. (17 U.S.C. § 116; 1(e).) Patent and copyright infringement suits are in many ways similar to trademark infringement cases, yet Congress has not provided for attorney's fees in trade mark cases. We can hardly say that this was inadvertent,[5] and that the courts should fill the gap by establishing, contrary to the usual rule, a right that Congress has not conferred.

L.Ed. 203 (trover); Philp v. Nock, 1873, 84 U.S. (17 Wall.) 460, 21 L.Ed. 679 (patent infringement); Stewart v. Sonneborn, 1878, 98 U.S. 187, 197, 25 L.Ed. 116 (malicious prosecution). See also: Missouri Pacific Ry. Co. v. Larabee, 1914, 234 U.S. 459, 34 S.Ct. 979, 58 L.Ed. 1398; Tullock v. Mulvane, 1902, 184 U.S. 497, 22 S.Ct. 372, 46 L.Ed. 657; Rude v. Buchhalter, 1932, 286 U.S. 451, 459–461, 52 S.Ct. 605, 76 L.Ed. 1221 (claimant to fund denied fees; stockholder allowed fees from fund).

3. Griggs v. Board of Trustees, 1964, 61 Cal.2d 93, 37 Cal.Rptr. 194, 389 P.2d 722; Prentice v. North Am. Title Guaranty Corp., 1963, 59 Cal.2d 618, 30 Cal.Rptr. 821, 381 P.2d 645. There is a multitude of California decisions to the same effect.

4. Mutual Ben. Health & Accident Ass'n v. Moyer, 9 Cir., 1938, 94 F.2d 906. There are a great many decisions of the courts of appeals to the same effect. See 20 West's Federal Digest, Costs, ☞172; 12

West's Modern Federal Practice Digest, Costs, ☞172; 27 West's Federal Digest, Damages, ☞70–72; 19 West's Modern Federal Digest, Damages ☞70–72.

5. There are many other statutes, most of them of a regulatory character, in which Congress has provided for the recovery of attorney's fees, usually as an incentive to the injured party to aid in the enforcement of the Act, e. g., Antitrust laws, 15 U.S.C. §§ 15, 72; Acts dealing with the regulation of securities, securities dealers, trust indentures, etc., 15 U.S.C. §§ 77k (e), 77ooo(e), 77www(a), 78i(e); Interstate Commerce Commission Act, 49 U.S.C. § 16(2); Perishable Agricultural Commodities Act, 7 U.S.C. § 499g(b); Packers and Stockyards Act, 7 U.S.C. § 210(f); Water Carriers, 49 U.S.C. § 908(b); see also 28 U.S.C. §§ 1346(b), 2678, relating to the Federal Tort Claims Act; 22 U.S.C. § 1623(f) and 50 U.S.C. App. § 1985—international and Japanese evacuation claims. See Note, 8 L.Ed.2d 894 at pp. 922–32.

Moreover, Congress has provided a different means whereby parties injured by trademark infringement can be compensated when it is difficult or impossible to prove actual pecuniary loss. Section 1117 of Title 15, U.S.C. provides for the recovery of defendant's profits, plaintiff's damages, and costs. It then provides:

"In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty."

Having given the court so broad an authority to award damages in excess of those proved, the Congress may well have felt—as we do—that it would be piling Pelion on Ossa to provide for attorney's fees as well.[6] Neither the Copyright Act (17 U.S.C.) nor the patent law (35 U.S. C.) contains a similar provision. If attorney's fees can be awarded in addition to the award permitted by section 1117, there is grave danger of duplication of damages, as a practical matter. (Cf. Day v. Woodworth, 1851, 54 U.S. (13 How.) 363, 372, 14 L.Ed. 181)

Two of the decisions of the Supreme Court cited in footnote 2, supra, (Teese v. Huntingdon, and Philp v. Nock), seem to us very nearly to compel the result that we reach. Each holds that attorney's fees cannot be recovered in a patent infringement suit. Congress has overruled them in part, by providing for such a recovery "in exceptional cases," and this court has carefully adhered to the limitation imposed by Congress. (Park-In-Theatres, Inc. v. Perkins, 9 Cir., 1951, 190 F.2d 137) We can see no such difference between trademark infringement and patent infringement as to justify an award of attorney's fees in the former when Congress has not provided for it. Neither National Van Lines nor Wolfe considers these cases, or discusses the problem that they pose. They are old cases, but they have never been questioned by the Supreme Court and would presumably still be good law if Congress had not intervened.

It seems clear that, under the standards laid down by us in Park-In-Theatres, supra, the award here involved would not be proper even if the Lanham Act contained the same provision for the recovery of attorney's fees as does the Patent Law. Yet here the defendant, whose case was good enough to convince an experienced trial judge that it should win, now finds itself subject to a judgment for over $60,000 for the plaintiffs' attorney's fees, on the theory that defendant should not have defended the lawsuit in the first place.

There still remains the question as to whether the authorities supporting an award of attorney's fees in a case like this are so numerous, of such long standing, and so well considered, that we ought not now to announce a contrary rule. We turn, then to the cases. National Van Lines is now nine years old. Wolfe cites nothing but National Van

---

6. No helpful legislative history has been brought to our attention. It is clear, however, that the Lanham Act—and the preceding trademark laws—have had a great deal of congressional attention. See S.Rep. 1333, p. 6, 79th Cong., 2d Sess. (1946), which gives a summary of bills introduced prior to the Lanham Act. We find no discussion of the question of attorney's fees. Since the adoption of the Act in 1946 (60 Stat. Ch. 540, p. 427 ff.), there have been at least two bills introduced that would have provided for a recovery of attorney's fees (S. 2540, 83rd Cong., 1st Sess., S.Rep. 2266, 83rd Cong., 2d Sess., which passed the Senate but not the House, and H.R. 7734, 84th Cong., 1st Sess., on which no action was taken). This, however, is the weakest kind of legislative history. We do not rely on it.

Lines, and is six years old.[7] Wolfe, we think, is good authority only if National Van Lines is. The latter cites three cases, which we now consider.

Aladdin Mfg. Co. v. Mantle Lamp Co., 7 Cir., 1941, 116 F.2d 708, the oldest of the cases, has been on the books for 24 years, and has been cited and relied upon by this and other circuits.[8] It was a trademark case, under the statutes (former 15 U.S.C. §§ 99, 96) then in force. The opinion covers 7 pages of the Federal Reporter. It deals with an accounting for profits, damages, and exemplary damages. In discussing the latter, it says (p. 717):

"In the present case, there was direct proof that because of the fraudulent and wilful infringement and unfair competition of appellee, appellant incurred legal expenses aggregating $18,-515.03. Counsel's fees necessitated by the tort have been said in some instances to be recoverable as a part of the compensatory damages and in other cases as a part of exemplary damages. As the master's finding of wilful and fraudulent conduct is sustained by the evidence, this sum was recoverable as compensatory damages and hence properly included in the amount recommended by him."

No authority is cited. The question whether the statute authorizes the award is not specifically discussed. The decision flies in the face of the cases cited in footnote 2, supra. We think that the case has nothing to recommend it as authority on the point before us, except its age, if that be a recommendation.

Admiral Corp. v. Penco, 2 Cir., 1953, 203 F.2d 517, was a trademark case in which the trial court found infringement, granted an injunction, awarded attorney's fees, but denied damages or an accounting for profits. On appeal, this judgment was affirmed. In its opinion, the court discussed jurisdiction, the merits of the case, a motion by defendant for continuance pending certain matters in the patent office, and the right to an accounting. As to attorney's fees, the court said (p. 521):

"The permanent injunction and the counsel fees awarded plaintiff were fully justified."

\* \* \* \* \* \*

"Since, however, the plaintiff had to defend in this court to preserve its patently just judgment, it will be awarded appellate costs, together with additional attorney's fees of $500. R. F. C. v. J. G. Menihan Corp., 312 U.S. 81, 85, 61 S.Ct. 485, 85 L.Ed. 595; Century Distilling Co. v. Continental Distilling Corp., D.C.E.D.Pa., 102 F.Supp. 39."

Again, there is no discussion of whether an award of attorney's fees is proper in a Lanham Act case. The R.F.C. case does not touch the question. It holds that costs can be awarded against the R.F.C., a government corporation. Century Distilling Co., a District Court case, refused an award of counsel fees, and Chief Judge Kirkpatrick expressed doubt as to the soundness of Aladdin and as to his power to make an award. His decision was affirmed (see footnote 8, su-

---

**7.** High Fidelity Recordings, Inc. v. Audio Fidelity, Inc., 9 Cir., 1962, 305 F.2d 86 relies primarily on National Van Lines. It was an action for unfair competition under California law. It was not a trademark case. We need not consider whether it correctly applied California law.

**8.** National Van Lines and High Fidelity Recordings, Inc. in this circuit, and Keller Products, Inc. v. Rubber Linings Corp., 7 Cir., 1954, 213 F.2d 382, 47 A.L.R.2d 1108, discussed in this opinion;

Local No. 149 Intern. Union, United Auto, etc., Workers of America v. American Brake Shoe Co., 4 Cir., 1962, 298 F.2d 212, an action under section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a)); Maternally Yours, Inc. v. Your Maternity Shop, Inc., 2 Cir., 1956, 234 F.2d 538, a Lanham Act case; Century Distilling Co. v. Continental Distilling Corp., 3 Cir., 1953, 205 F.2d 140 (case not followed—cited semble). We do not list the few District Court actions.

pra). Of such materials are authorities sometimes constructed.[9]

Keller Products, Inc. v. Rubber Linings Corp., 7 Cir., 1954, 213 F.2d 382, is the third case cited in National Van Lines. It was an action for trademark infringement and unfair competition. A judgment for the plaintiff, awarding $1,500 punitive damages and $1,500 attorney's fees, was modified by striking the award of punitive damages. The court considered the merits at length, and held that punitive damages were not properly awarded because the case was not "an extreme case" of "willful and wanton infringement." As to attorney fees, it said (p. 388):

> "The allowance of $1,500 attorney fees is in a somewhat different category. As pointed out by this court, in the Aladdin case, supra, 116 F.2d at page 717, 'Counsel's fees necessitated by the tort have been said in some instances to be recoverable as a part of the compensatory damages and in other cases as a part of exemplary damages.' In the case at bar the trial court assessed only a part of the attorney fees incurred by plaintiff in this action. We think the allowance of $1,500 to cover part of plaintiff's litigation expenses was proper as compensatory damages."

We suggest that this is no better authority than Aladdin.[10]

National Van Lines has been cited once on the matter of attorney's fees, by another Court of Appeals, in United Auto Workers, supra, fn. 8. That case arose under the LMRA; it hardly adds to the stature of National Van Lines as authority under the Lanham Act. Wolfe has likewise been cited by other Courts of Appeals—in United Auto Workers, supra, fn. 8, and in Baker, supra, fn. 9.

There are other decisions by Courts of Appeals in accord with National Van Lines and Wolfe. One is Maternally Yours, Inc. v. Your Maternity Shop, supra, fn. 8. Plaintiff there invoked both the Lanham Act and the New Jersey law of unfair competition. Judgment was for the plaintiff on both theories, and an injunction, an accounting for profits, and attorney's fees were awarded. On the attorney fee question, the court said: (234 F.2d at 545)

> Defendant also objects to the inclusion in the interlocutory decree of a provision awarding counsel fees to the plaintiff. It is now settled that counsel fees may be awarded to the successful litigant in trade-mark infringement cases where there is a finding of fraud. Keller Products, Inc., v. Rubber Linings Corp., 7 Cir., 1954, 213 F.2d 382; Century Distilling Co. v. Continental Distilling Corp., supra; Admiral Corp. v. Penco, Inc., supra; Aladdin Mfg. Co. v. Mantle Lamp Co., 7 Cir., 1941, 116 F.2d 708; General Motors Corp. v. Circulators & Devices Mfg. Corp., D.C.S.D.N.Y.1946, 67 F. Supp. 745. Gold Dust Corp. v. Hoffenberg, 2 Cir., 1937, 87 F.2d 451, which is to the contrary, would appear to have been overruled *sub silentio* by Admiral Corp. v. Penco, Inc., supra.

We have already commented on Keller, Admiral and Aladdin, (see supra) as well as Century Distilling (see fn. 8, supra). In General Motors Corp., the judge refused to award attorney's fees, citing Gold Dust Corp. Maternally Yours has been cited in United Auto Workers, supra, fn. 8. Again we do not discuss district court citations.

Baker v. Simmons Company, supra, fn. 9 was an action for trademark in-

<hr/>

9. The writer has an uncomfortable feeling that on occasion he may have done the same thing. Admiral Corp., too, has been cited in other cases; High Fidelity Recordings, Inc., supra, fn. 7; Baker v. Simmons Co., 1 Cir., 1963, 325 F.2d 580, which also cites Wolfe and Keller; United Auto Workers, supra, fn. 8; Maternally

Yours, Inc., supra, fn. 8. Again, we do not list District Court citations.

10. Like Aladdin and Admiral, Keller has progeny. It is cited in High Fidelity Recordings, Inc., supra, fn. 7; Baker, supra, fn. 9: United Auto Workers, supra, fn. 8; Maternally Yours, Inc., supra, fn. 8.

fringement and unfair competition. The Court of Appeals for the First Circuit upheld a large award of attorney's fees, but reversed in other respects. As to the attorney's fees, the court says: (325 F.2d at 583)

> "Finally, there is more than sufficient authority for the allowance of counsel fees in Lanham Act actions where the defendant is found guilty of fraud and palming-off. Wolfe v. National Lead Company, 272 F.2d 867 (9th Cir. 1959); Keller Products [Inc.] v. Rubber Linings Corp., 213 F.2d 382 (7th Cir. 1954); Admiral Corp. v. Penco, Inc., 203 F.2d 517 (2d Cir. 1953)."

All of the cited cases have been discussed in this opinion. Baker has not yet been cited on this point.[11]

The reader may have observed a certain circularity in the judicial process by which this line of authority grew up. It began with a rather casual holding, citing no prior authority, in Aladdin, supra. That case is then cited and followed, without discussion, by the seventh circuit in Keller in 1954, by this court in National Van Lines and by the second circuit in Maternally Yours in 1956, by the fourth circuit in United Auto Worker (a different sort of case) in 1962, and by this court in 1962 in High Fidelity Recordings, Inc., (supra, fn. 7). Meanwhile, in 1953, along comes Admiral, again a decision without discussion, not supported by the cases that it cites. Yet it is then cited by this court in National Van Lines and High Fidelity Recordings, Inc., by the seventh circuit, in Keller, by the fourth circuit in United Auto Workers, by the second circuit in Maternally Yours, and by the first circuit in Baker. The subsequent cases cite such of others as had then been decided. Thus the second circuit could say, in

Maternally Yours, that "it is now settled," and the first could say, in Baker, that there is "more than sufficient authority." Yet in order to say that the question is "settled," the second circuit also had to say that its own contrary prior decision had been "overruled *sub silentio*" by Admiral.[12]

That prior decision is Gold Dust Corporation v. Hoffenberg, 2 Cir., 1937, 87 F.2d 451. It is the one Court of Appeals opinion that considers the question with any care, and it holds, in substance, and after a rather lengthy analysis of the authorities, that attorney's fees are not recoverable in a trademark infringement case because the statute does not provide for them. This case is not cited in any of the cases, except Maternally Yours, that have allowed the award of such fees. It appears to us to be the one real "authority" on the point, and we think that it was correctly decided. It is also interesting, and almost incredible, that none of the other cases even mentions the general rule that attorney's fees are not recoverable, or the specific decisions of the Supreme Court in Teese v. Huntingdon and Philp v. Nock, supra, fn. 2, holding that such fees are not allowable in patent cases. We conclude, then, that the authorities are neither so old nor so numerous, and particularly that they are not so well considered, as to require that we follow them.

Appellees cite Sprague v. Ticonic Nat. Bank, 1939, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184. There Mr. Justice Frankfurter, speaking of an award of counsel fees, held that:

> "Allowance of such costs in appropriate situations is part of the historic equity jurisdiction of the federal courts. The suits 'in equity' of which these courts were given 'cognizance'

---

11. We have quoted above, in each case, everything that each court said about the problem. It will be noted that no case really discusses it. In every case, the court simply made a ruling. Perhaps this is because, in each case, the court devoted most of its attention to the merits, and then passed upon the attorney's fee question as a mere incident,

disposing of it in a "clean up" paragraph at or near the end of its opinion.

12. The *"silentio"* in Admiral was profound. Not only was Gold Dust not cited, the question was not discussed, and the authorities cited do not support the decision.

ever since the First Judiciary Act, * * * constituted that body of remedies, procedures and practices which theretofore had been evolved in the English Court of Chancery, subject, of course, to modifications by Congress, e. g., Michaelson v. United States [etc.], 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162. The sources bearing on eighteenth-century English practice—reports and manuals—uniformly support the power not only to give a fixed allowance for the various steps in a suit, what are known as costs 'between party and party,' but also as much of the entire expenses of the litigation of one of the parties as fair justice to the other party will permit, technically known as costs 'as between solicitor and client.' To be sure, the usual case is one where through the complainant's efforts a fund is recovered in which others share. Sometimes the complainant avowedly sues for the common interest while in others his litigation results in a fund for a group though he did not profess to be their representative. The present case presents a variant of the latter situation."

\* \* \* \* \* \*

* * * "As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility. In the actual exercise of the power to award costs 'as between solicitor and client' all sorts of practical distinctions have been taken in distributing the costs of the burden of the litigation. * * * In any event such allowances are appropriate only in exceptional cases and for dominating reasons of justice. But here we are concerned solely with the power to entertain such a petition." (Pp. 164–166, 167, 59 S.Ct. pp. 779–780)

As the foregoing quotation indicates, the case before the Court dealt with a situation in which plaintiff's action redounded to the benefit of others, and it only held that, in such a case, she could be awarded attorney's fees. The language of the opinion, however, does indicate a broader power, and could be used to support the power to award fees such as this.[13] Here, the suit is for an injunction and damages, and is thus, at least as to the injunctive phase, a suit in equity. But it is in substance an action in tort, and we cannot see anything so peculiarly heinous about this tort as to justify the use of the "historic equity jurisdiction" to award attorney's fees to the plaintiff. We note, too, that in his opinion in Sprague Mr. Justice Frankfurter does not mention any of the cases cited in footnote 2, supra, much less either overrule or limit them. He was dealing with a rather special type of situation, and we do not think that this case is of that type.

13. Sprague has been frequently cited, but usually in cases having closely analogous facts. Bakery & Confectionery Workers etc., v. Ratner, 1964, 118 U.S.App. D.C. 269, 335 F.2d 691; Milone v. English, 1962, 113 U.S.App.D.C. 207, 306 F.2d 814; Walsh v. National Savings & Trust Co., 1957, 101 U.S.App.D.C. 195, 247 F.2d 781; United States v. Anglin & Stevenson, 10 Cir., 1944, 145 F.2d 622; O'Hara v. Oakland County, 6 Cir., 1943, 136 F.2d 152. Fees have been disallowed on its authority when no common fund was created. Whittier v. Emmet, 1960, 108 U.S.App.D.C. 191, 281 F.2d 24; Carlisle, Brown & Carlisle v. Carolina Scenic Stages, 4 Cir., 1957, 242 F.2d 259. It has been relied upon in cases involving many small claims, such that, individually they would not justify separate suits. Bakery & Confectionery Workers v. Ratner, supra; Rolax v. Atlantic Coast Line R. Co., 4 Cir., 1951, 186 F.2d 473; Schauffler v. United Association of Journeymen, etc., 3 Cir., 1957, 246 F.2d 867. In two cases it has been cited when the court disallowed claimed items of costs not provided for by statute. Specialty Equip. & Mach. Corp. v. Zell Motor Car Co., 4 Cir., 1952, 193 F.2d 515; Swan Carburetor Co. v. Chrysler Corp., 6 Cir., 1945, 149 F.2d 476. Only one case has cited Sprague in a case comparable to the present one, Carter Prods., Inc. v. Colgate-Palmolive Co., D.Md., 1963, 214 F.Supp. 383, and that was a patent case, where the statute does provide for the recovery of attorney's fees.

We hold that attorney's fees are not recoverable in trade-mark infringement cases under the Lanham Act, primarily because the Congress has not provided for them. We do not think that such cases are among the exceptional ones of which Mr. Justice Frankfurter spoke in Sprague v. Ticonic Nat. Bank, supra. We do not think that we should create an exception when Congress has legislated so fully in the area, and has not provided for attorney's fees. We overrule Wolfe, to that extent, and limit National Van Lines to its actual holding, as to the correctness of which we express no opinion.

Reversed, with directions to deny appellee's request for attorney's fees.