**ADMIRAL CORP. v. PENCO, Inc.**

**Civ. No. 5036.**

United States District Court
W. D. New York.

Aug. 1, 1952.

See also D.C., 101 F.Supp. 677.

Charles Shepard, Rochester, N. Y., for plaintiff, Wilkinson, Huxley, Byron & Hume, Chicago, Ill., Gerrit P. Groen, and James R. Oberly, Chicago, Ill., of counsel.

Marvin L. Falk, Rochester, N. Y., for defendant, Caesar & Rivise, and A. D. Caesar, Philadelphia, Pa., of counsel.

BURKE, District Judge.

This action is based upon alleged trademark infringement and unfair competition. Admiral Corporation owns and operates numerous manufacturing plants throughout the United States and maintains distributors throughout the United States and the world. At the present time it manufactures or distributes television sets, radios, radio-phonograph combinations, refrigerators, electric ranges and some miscellaneous appliances and parts. Penco has an office and store in Rochester, N. Y. and operates stores in Elmira, Binghamton, Syracuse and Buffalo. It manufactures none of the products it sells. It sells at retail electric vacuum cleaners, electric sewing machines, electric floor polishers and parts for these appliances. Jurisdiction is invoked by reason of the fact that Admiral charges Penco with infringement of its trademark Admiral which has been registered in the United States Patent Office. The registrations cover a variety of electrical appliances. It is further invoked on the ground of diversity of citizenship involving a claim exceeding the jurisdictional amount for damages based on alleged unfair competition.

Admiral's predecessor, Continental Radio and Television Corporation, acquired the trademark Admiral together with its good will by assignment from Columbia Radio Corporation in 1936. Admiral was first adopted by Columbia as its mark for radios in October, 1929. Continental was organized in 1934. Admiral has been used as its house mark since 1939. In 1943 it changed its name to Admiral Corporation. It has continuously used the mark Admiral as the dominant trademark for all of its products. Current annual sales are in excess of $200,000,000. Since the adoption and use of the trademark Admiral it has sold in excess of $1,000,000,000 worth of its products valued at retail under the trademark Admiral. For the same period it spent approximately $47,000,000 in advertising its goods under the trademark Admiral through direct advertising and distributor and dealer advertising. Its products are sold throughout the United States, Canada and Mexico and in every other continent in the world. Its trademark Admiral has been registered in the United States and thirty foreign countries. It is the world's largest manufacturer of television sets. It maintains a large research staff and is constantly on watch for expansion of its line of products. It has a sales organization consisting of eighty-one distributors and over

thirty-one thousand dealers. Its products have attained wide and general acceptance and a reputation for quality.

The defendant has challenged jurisdiction on both asserted grounds. Plaintiff's extensive sales of electrical appliances bearing the mark Admiral covering the entire United States, Canada, Mexico and foreign countries, and its large expenditures for advertising the mark in connection with its products, and public recognition of the mark as denoting plaintiff's electrical appliances are ample to establish the statutory requirement of the amount in controversy to justify jurisdiction on the ground of diversity of citizenship. A showing anywhere in the record that the jurisdictional amount is involved will satisfy the statutory requirement. Harvey v. American Coal Co., 7 Cir., 50 F.2d, 832; Food Fair Stores v. Food Fair, 1 Cir., 177 F.2d 177. Defendant asserts that its activities are wholly intrastate and not subject to attack for infringement arising as a result of rights conferred on the plaintiff by its federal trademark registrations. Defendant buys its vacuum cleaners in Chicago. The cleaners are shipped from Chicago either to defendant's headquarters in Philadelphia or direct to its stores in New York. Its sewing machines are imported from Japan, where the trademark Admiral is affixed. The sewing machines are delivered to defendant's headquarters in Philadelphia and shipped from there to its stores in New York. This is sufficient to establish that its activities are not wholly intrastate. Attempting to distinguish its activities from those under consideration in Pure Oil Co. v. Puritan Oil Co., 127 F.2d 6, it makes the novel argument that the shipments of vacuum cleaners and sewing machines bearing the mark Admiral, concededly interstate shipments, were shipments in cartons or crates which did not bear the trademark Admiral on the outside, and so did not involve the use of the mark in interstate shipments. This argument appeals neither to reason nor to precedent. Ironite Co. v. Guarantee Waterproofing Co., 8 Cir., 64 F. 2d, 608, 610. Moreover, even if it were established that defendant's use of the trade-

mark Admiral was wholly intrastate, there is enough in the proof to show that such use has affected or may affect plaintiff's interstate use of the mark. Plaintiff has built up a reputation for quality of its products sold under the mark Admiral and public recognition of the mark as denoting electrical appliances of quality originating with Admiral Corporation. Defendant by its methods of selling products marked Admiral, over whose quality and over whose selling procedures the plaintiff has no control, has endangered plaintiff's reputation by customer confusion, and it may fairly be inferred that if defendant's use of the mark Admiral is allowed to continue such use by defendant, even if wholly intrastate would result in a falling off of plaintiff's sales in the area where defendant operates. This court has jurisdiction of the controversy on both asserted grounds.

Penco started selling its electric sewing machines and vacuum cleaners under the trademark Admiral in early 1950. It is undisputed that plaintiff used the trademark Admiral in marketing its products long before Penco decided to adopt it as its mark for vacuum cleaners and electric sewing machines. Up to early 1950 Penco had used the trademark Avalon to identify its vacuum cleaners. It then adopted the mark Admiral because "we thought it would be more receptive", because "it means tops in something." This explanation suggests the query why it meant "tops in something" in 1950 and not before, and if it meant "tops in something", why the mark was not used in its advertising. It did not advertise its Admiral vacuum cleaners or sewing machines. It consistently advertised rebuilt Singer sewing machines and Electrolux vacuum cleaners at a very low price for the purpose of securing leads to sell its Admiral machines. It is not too much to say that the rebuilt Singer sewing machines and Electrolux vacuum cleaners which Penco consistently advertised were not advertised primarily for sale. These rebuilt machines were advertised two or three times a week. Despite this consistent advertising Penco carries a stock in its Rochester store of about twelve to fourteen

rebuilt Electrolux cleaners and the same number of Singer sewing machines. A salesman's commission was three per cent on rebuilt machines and eleven per cent on new machines. The primary purpose in advertising the rebuilt machines is to sell the Admiral vacuum cleaners and sewing machines which are not even advertised. The adoption of the mark Admiral on goods so closely related to those sold by the plaintiff strongly suggests that the motive was to take advantage of the plaintiff's established reputation.

The main issue for determination is whether there is sufficient similarity of goods between defendant's electric sewing machines and vacuum cleaners and plaintiff's products consisting of television sets, radios, radio-phonograph combinations, refrigerators and electric ranges so as to cause confusion or likelihood of confusing ordinary purchasers of defendant's sewing machines and vacuum cleaners as to their origin or source.

Penco's established selling policy is a shabby plan to foist on customers by subtle means strikingly devoid of forthright approach its Admiral marked vacuum cleaners and sewing machines which customers have had no previous opportunity to consided on their merits, either through descriptive literature distributed before purchase or through conventional advertising. On the hearing on the motion for temporary injunction defendant's store manager called it "step up selling". On the trial his successor as store manager was less dignified and more frank. He called it "bait advertising." He said "Penco advertises rebuilt cleaners and rebuilt sewing machines. That is the method they use to get into the house." This method of selling Penco had followed for two and a half years. It issued instruction booklets and guarantees which accompanied the Admiral branded products when sold, encouraging purchasers to rely upon liberal guarantees by "authorized Admiral dealers".

All this might still be unactionable but for the fact that it is precisely this devious approach which makes it possible for Penco to deceive the average unwary purchaser into believing that its products originate with Admiral Corporation. The mark Admiral is prominently displayed on both the vacuum cleaner and the sewing machine. On the vacuum cleaner the plate showing the source of the product is on the bottom of the cleaner which necessitates turning the cleaner bottom side up for one to examine it. On the sewing machine exhibited at the hearing on the motion for a preliminary injunction the stamp "Made in Japan" is placed on the head of the sewing machine back of the motor so that it is difficult if not impossible to read it. Later models display the "Made in Japan" plate in a conspicuous place. Defendant issued an instruction booklet which accompanies its sewing machines which contains the legend "Nationally distributed and serviced by authorized Admiral sewing machine dealers everywhere", when in fact the defendant operates only in New York. The Rochester store has one repair man. These pertinent facts coupled with the fact that prospective purchasers had no means of knowing the origin of defendant's vacuum cleaners before they were physically exibited for sale and the fact that neither the sewing machine nor its case disclosed the manufacturer's name are persuasive evidence that defendant's selling policy is designed to reap the benefit of Admiral's extensive advertising and the reputation for its products obtained thereby, and that customers were both likely to be confused and were actually confused as to the source of defendant's machines. Unless a customer was sufficiently aggressive to overcome the obstacle of the physical placement of the name plates on the vacuum cleaners showing their source she had three possible ways of learning their source; (1) By a volunteered statement of the salesman that the cleaner did not originate with Admiral Corporation. I am not so naive as to conclude in this setting that such volunteered statements were either frequent or a matter of policy; (2) She could ask the direct question whether the cleaner was made by Admiral Corporation. The evidence establishes that frequently this was met

by an outright deceptive answer; (3) She could learn the origin from previous purchasers of defendant's cleaners. But there is no proof that defendant's cleaners were so widely distributed and so well known as to make this means an adequate or satisfactory notice of their origin or source. As to the sewing machines even an owner of one had no means of knowing the manufacturer's name from any identification or reference either on the machine or on its case.

■ Plaintiff does not sell sewing machines or vacuum cleaners but that does not preclude it from obtaining equitable relief under these circumstances for the protection of its trade in products sold under the trademark Admiral. Plaintiff had established a substantial market for its products sold under the mark Admiral long before defendant's use of the same mark on articles not so far removed from the nature and kind of plaintiff's products as to obviate the likelihood of customer confusion as to the origin of the goods. The right to protection of good will and reputation in connection with the trade in goods sold under an established mark extends not only to the identical goods but to items of the same general kind or of the same descriptive properties to which the mark would bear a natural trade significance. Landers, Frary & Clark v. Universal Cooler Corp., 2 Cir., 85 F.2d 46; Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407; Anheuser-Busch v. Budweiser Malt Products Corp., 2 Cir., 295 F. 306; Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972. The mere fact that the defendant's salesmen on occassions represented to customers that the sewing machines and vacuum cleaners were products of Admiral Corporation and that customers readily believed them is evidence of the strongest character that the products are closely related in the trade. So also is defendant's adoption of the identical mark used by the plaintiff. A dealer in electric household appliances would readily foresee customer susceptibility to any suggestion, even direct, that electric household appliances usually sold together in the same outlets and bearing the identical name would come from the same source. The susceptibility is engendered by the close association of the goods in the trade. It is too obvious for argument that plaintiff is entitled to some kind of injunctive relief, at the very least that which would enjoin the defendant from affirmatively representing to prospective customers that defendant's products originate with Admiral Corporation. Such affirmative representations were amply established at the trial.

■ But such limited relief is not adequate to protect the plaintiff's good will and reputation that has been established by the use of its trademark Admiral on electrical appliances that it sells. Electric sewing machines and vacuum cleaners are commonly sold in the same stores which sell television sets, radios, electric ranges and electric refrigerators. They are sold to the same class of purchasers. The proof at the trial through customer evidence establishes, wholly apart from affirmative misrepresentations as to origin, not only likelihood of customer confusion that electric sewing machines and vacuum cleaners bearing the trademark Admiral are products of Admiral Corporation but also actual customer confusion as to origin. Plaintiff has no control over the methods used by defendant in selling its appliances nor has it any control over the quality of defendant's products. It has a property interest in the ownership of its mark in connection with established use in identifying its line of merchandise. This should not be subjected to the risk of damage by an intruder in the field who, offering no plausible explanation, adopts the identical mark on related goods. Moreover that interest is entitled to protection even beyond the trade in the goods currently manufactured or sold. The protection should be broad enough to sufficiently safeguard its interest by anticipating natural expansion to cover the sale of closely related items in the same general field of electric household appliances for the reason that such closely related items would reasonably be thought by customers to have the same origin if sold under the same trademark. Landers, Frary

& Clark v. Universal Cooler Corp., supra; Yale Electric Corp. v. Robertson, supra; Standard Brands v. Smidler, 2 Cir., 151 F.2d 34; Standard Brands v. Eastern Shore Canning Co., 4 Cir., 172 F.2d 144.

■ Defendant asserts that since the mark Admiral was not a coined mark it is not entitled to protection beyond the articles on which it has been used. Counsel refers to France Milling Co. v. Washburn Crosby Co., 2 Cir., 7 F.2d 304 as the leading case supporting that ·contention. In Landers (supra) the Court pointed out that what was said in support of that contention in the France Milling ·Case· was obiter, and that it is but a matter of proof and of that alone as to how far the connotation of ·a mark has ·, extended. In Landers the mark was Universal which, as the Court pointed out "had already been applied to every conceivable kind of goods, but that was material only as evidence of whether it did in fact mean the plaintiff here". 85 F.2d at pages 48, 49. Without attempting to discuss all of the cases relied on in support of defendant's contention it is enough to say that what is important is not whether the· mark is a coined one or not but what the proof establishes as to what the mark has come to mean in the trade.

In further support of its asserted de- fense that Admiral is a weak mark not entitled to protection beyond existing· use, defendant introduced in evidence thirty- one trademark registrations using the word Admiral either alone or in combination. Six were applied to automotive products and motor fuel, three to alcholic bever- ages, five to clothing and fabrics, four to food products, and the balance to ·miscel- laneous items covering a wide variety of products. All of the items to which the registrations applied are wholly unrelated to electrical household appliances and have no bearing on the question of the scope of plaintiff's rights in the mark Admiral.

On the trial market survey evidence of likelihood of customer confusion was of- fered by the plaintiff and over objection was received. The court, however, left open the question of its competency. In deciding this case I have found it unnec- essary to· consider such testimony. The conclusions reached here have been ar- rived at entirely without· any considera- tion of such testimony. Neither have I considered the testimony of the witness who testified on the original hearing on the motion for a preliminary injunction to de- fendant's misrepresentations, but who did not testify at the trial.

■ Although the evidence has es- tablished infringement and unfair competi- tion, it has not established that the plaintiff up to now has sustained any material dam- age to its reputation or good will, nor does the evidence establish that it has lost any sales of its products by reason of defend- ant's unlawful use of the mark Admiral. An accounting for profits should therefore be denied. Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386; Triangle Publications v. Rohrlich, 2 Cir., 167 F.2d, 969. But the impending threat of damage to the plain- tiff's good will and reputation by contin- ued use of the mark by the defendant jus- tifies the court in using its equitable powers to prevent further infringement and un- fair competition by injunction.

■ The plaintiff in its prayer for re- lief has asked the recovery of reasonable attorney's fees to be determined in the ac- counting for profits and damages. Since an accounting for profits has been denied, there being no material damage, I construe the prayer for relief as an application for an additional allowance. The defendant has deliberately appropriated plaintiff's trademark with the intention of inducing customers to believe that its products orig- inate with Admiral Corporation and with the intention of reaping the benefit of plaintiff's good will and reputation by con- fusing its customers as to the source of defendant's goods. Its unlawful use has caused actual customer confusion and has placed the plaintiff's good will and reputa- tion in imminent danger of damage. Such deliberate and intentional unlawful use of plaintiff's trademark has made it necessary for plaintiff by this suit to vindicate its ex- clusive right to the mark· in the field of electric household appliances, and to pre- vent threatened damage to its good will

## 1022

and reputation. These equitable consid-erations (exceptional because there has been no material damage although infringe-ment has been established) are sufficient reasons in the interest of justice for the granting of an extra allowance in the ex-ercise of discretion. Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Reconstruction Finance Corp. v. J. G. Menihan Corp., 2 Cir., 111 F.2d, 940, 942.

Judgment for plaintiff for a permanent injunction with ordinary taxable costs plus an additional allowance for attorney's fees of $2,000. Separate findings and conclu-sions are filed herewith.