APPLE GROWERS ASSOCIATION,
Plaintiff,

v.

PELLETTI FRUIT COMPANY, Inc.,
Defendant.

Civ. No. 7322.

United States District Court
N. D. California, N. D.

June 27, 1957.

Kenneth S. Klarquist and Buckhorn, Cheatham & Blore, Portland, Or., John F. Downey and Downey, Brand, Seymour & Rohwer, Sacramento, Cal., for plaintiff.

William G. MacKay, San Francisco, Cal., Frank L. Barrett, and Geary, Spridgen & Moskowitz, Santa Rosa, Cal., for defendant.

BOLDT, District Judge.

Plaintiff Apple Growers Association, an Oregon corporation, seeks to restrain defendant Pelletti Fruit Company, Inc., a California corporation, from using a diamond symbol or the word "Diamond" as part of defendant's trademark or name in connection with the production, sale or shipment of fresh apples.

Jurisdiction of the court to try the issues of unfair competition and technical trademark infringement, raised by the pleadings, is based upon § 1332 of 28 U.S.C. by virtue of the diversity of citizenship and amount in controversy as well as upon § 1338 of the same title and § 1121 of Title 15.

In 1917 plaintiff, as successor to the Hood River Apple Growers Union, became the assignee of United States Patent Office Registration No. 90,992 covering the use of a diamond symbol as a trademark for fresh apples. Thereafter in 1935 plaintiff was granted trademark Registration No. 321,880 covering a blue diamond symbol and the words "Blue Diamond Brand" for fresh apples. This registration was later renewed under the provisions of Section 9 of the Trademark Act of 1946 (Lanham Act), 15 U.S.C.A. § 1059 and is presently in force and effect.

In 1950, pursuant to the Act of 1946, plaintiff was granted by the United States Patent Office registration of three additional trademarks: No. 525,600 consisting of a diamond symbol for "fresh deciduous fruits—namely, fresh apples, fresh pears and fresh cherries;" No. 525,599 consisting of the word "Diamond" accompanied by a diamond symbol, also for fresh deciduous fruits; No. 525,598 consisting of the words "Blue Diamond" accompanied by a blue diamond symbol, also for fresh deciduous fruits. The diamond symbols in trademarks 525,600 and 525,599 are shown in the certificates of registration to be lined for color blue but no particular color is specifically claimed. All three of the 1950 registrations have since become incontestable pursuant to §§ 1065 and 1115(b) of Title 15 U.S.C.A. and therefore are now conclusive evidence of plaintiff's exclusive right to the use of such marks in commerce or in connection with the goods specified in the certificates.

Since 1917 plaintiff has engaged continuously in the business of growing and selling fresh apples in interstate and foreign commerce on a large scale, always using various combinations of the word "Diamond" and a diamond symbol to identify its product. Through the years and widely in the apple trade brokers, wholesalers and retailers have come to associate the diamond brand with apples grown and shipped by plaintiff. "Diamond brand apples," as plaintiff's apples are commonly known in the trade, have for many years been considered by both foreign and domestic buyers to be highly desirable because of their uniform high quality and salability.

Henry Pelletti, president of the defendant corporation, has been in the fruit and produce business in California for the past 29 years, having been employed in various capacities in connection with the marketing of apples prior to 1941 and as general manager of the Dahlke Fruit Co. of Graton, California, from 1942 to 1945. In 1946 Pelletti and others organized the defendant corpora-

tion naming Pelletti as president. Some time in 1946 the defendant began marketing apples in California and in interstate commerce under a label bearing the name "Sebastopol Diamond" and a diamond symbol. Defendant's apples are sold in substantially the same market areas in California as plaintiff's apples. Defendant's Sebastopol Diamond label has never been registered with the United States Patent Office as a trademark although application for registration was filed after the institution of this suit.

■ Plaintiff contends that defendant's use of labels on its fresh apples bearing the name "Sebastopol Diamond" and a diamond symbol constitutes unfair competition and infringement of its various diamond trademarks. To support this contention plaintiff argues that although the diamond was initially a "weak" mark it has acquired a secondary significance through prolonged use which entitles it to protection both at common law and under the terms of the Lanham Act. It is plaintiff's position that "Diamond brand apples" to the trade means apples of the Apple Growers Association and that the use by defendant of the Sebastopol Diamond label is likely to produce confusion in the minds of apple buyers (brokers, wholesalers and retailers) as to the source of the apples so advertised and marketed. Plaintiff urges that this likelihood of confusion is an infringement of its diamond trademark because of its probable effect of diluting the value and lessening the distinctiveness of plaintiff's mark, and that it is unfair competition in that it permits defendant to profit unjustly from the goodwill which plaintiff has established. In consequence of the alleged infringement and unfair competition, plaintiff asks: (1) a declaration that defendant's use of the trademark "Sebastopol Diamond" constitutes unfair competition and infringement of plaintiff's trademark rights; (2) injunctive relief; (3) damages; (4) defendant's profits; and (5) costs, including attorneys' fees.

Defendant contends that trademark Registration No. 90,992 should have been cancelled and held invalid by reason of a Patent Office decision rendered January 27, 1916, by the Examiner of Trademark Interferences, in favor of one Roland Morrill of Benton Harbor, Michigan and adverse to the Hood River Apple Growers Union, predecessor ·to plaintiff in this action. However, the record shows that the decision was based on a written agreement between Morrill and the Union dated August 9, 1915, reciting that the marketing areas of the two producers were not in conflict. In those circumstances Union agreed not to contest the interference and Morrill agreed not to object to the continued use by Union of diamond labels. Therefore, a finding adverse to defendant's first contention is required.

■■ Defendant next contends that since plaintiff has not used the word "Diamond" and the diamond symbol alone, but has used them in conjunction with various colors indicating different grades of fruit and with pictures or words indicating the source of plaintiff's fruit as Hood River, Oregon, defendant's use of the word "Diamond" and the diamond symbol cannot be unfair competition or an infringement of plaintiff's marks. This contention is sufficiently answered in this Circuit by Mershon Co. v. Pachmayr, 9 Cir., 1955, 220 F.2d 879 and Tillman & Bendel v. California Packing Corp., 9 Cir., 1933, 63 F.2d 498, wherein it was held that infringement results from an appropriation of only part of a trademark where the partial appropriation results in confusion as to the source of origin of the goods sold under the infringing mark. In this connection defendant suggests that plaintiff's use of the diamond mark in conjunction with color grade designations (i. e., blue diamond for extra fancy, red diamond for fancy and white diamond for "C" grade) precludes plaintiff from seeking trademark protection for its labels. This argument also is without foundation for it is clear that a trademark may include a designation of grade or quality without losing its character as a trademark. Tillman & Bendell v. California Packing Corp., supra.

Defendant's next contention is that the word "Diamond" and the diamond shape, because of their wide and general use as trademarks and trade names in the fresh apple market, are not subject to exclusive appropriation by either plaintiff or defendant but are public property. Defendant claims that other apple growers and shippers in plaintiff's market areas in the past have used and presently are using trademarks employing a diamond term or symbol without challenge by the plaintiff. One of the most significant changes in trademark law introduced by the Lanham Act is the extension of registrability to marks which though originally weak have gained distinctiveness through use even though such use may have been concurrent with that of another user. The testimony of the various apple brokers and wholesalers who gave evidence at the trial is overwhelmingly convincing that plaintiff's mark has acquired a secondary significance identifying apples carrying the diamond brand with the plaintiff Apple Growers Association; furthermore, plaintiff's Registration Nos. 525,600, 525,599 and 525,598 have become incontestable under the terms of 15 U.S.C.A. §§ 1065 and 1115(b) unless one or more of the seven defenses enumerated in 1115(b) be established by the defendant. Therefore, it is found and held that the word "Diamond" and the diamond symbol applied to fresh apples as used in plaintiff's trademarks have acquired a secondary significance and that plaintiff is exclusively entitled to such use subject to the defenses enumerated in 15 U.S.C.A. § 1115(b).

■ The contention most strongly urged by defendant is that plaintiff was guilty of fraud in procuring the registration of its marks and that such marks are therefore not entitled to protection from infringement and should be cancelled. Defendant mistakenly grounds this claim solely upon the provisions of 15 U.S.C.A. § 1064. In a trademark infringement suit such defense may be asserted under 15 U.S.C.A. § 1115(b) (1). Under either section, however, the question to be decided remains the same, namely, whether defendant has succeeded in establishing that either the registration or the incontestable right to the use of any of plaintiff's marks was obtained fraudulently. There is no credible evidence of acts or representations on the part of plaintiff amounting to fraud in the procurement of any of its registrations or in acquiring incontestable rights to the use of any of its marks. Accordingly, plaintiff's trademarks are entitled to protection against infringement.

■ As to the equitable defenses of laches, estoppel and acquiescence asserted by defendant, such defenses are not available as against allegations of infringement of trademarks which have become incontestable under the appropriate provisions of the Lanham Act, but in any event there is no credible evidence in this case to support any of the alleged defenses. The defense of abandonment, while still available in such a situation, is not supported by any evidence.

■ Defendant finally asserts that plaintiff has come into court with "unclean hands" by virtue of its use of the legend "Reg. U. S. Pat. Off." on certain of its labels bearing the name "Red Diamond Brand" accompanied by a red diamond symbol and similar labels bearing the name "White Diamond Brand" and a white diamond symbol, when in fact the names "White Diamond Brand" and "Red Diamond Brand" and the red and white colored diamond symbols had never been registered with the United States Patent Office. Defendant readily admits that the red, blue and white colors were used by plaintiff to distinguish different grades of fruit and not necessarily as a part of the brand name or trademark. That this is true should be obvious from the express disclaimer in Registration Nos. 525,599 and 525,-600 of any particular color for the diamond symbol. The unclean hands contention is without merit.

It clearly appears that the defendant has been and now is guilty of acts of

trademark infringement amounting also to unfair competition and that plaintiff is entitled to a permanent injunction restraining defendant from such conduct. The evidence is insufficient to support an award of damages or profits as prayed for by plaintiff.

██ Costs in accordance with the applicable rules are awarded to plaintiff. Such costs will not include counsel fees. Counsel fees may be allowed as costs in exceptional cases at the discretion of the trial court, but ordinarily will not be awarded unless required by statute. Gold Dust Corp. v. Hoffenberg, 2 Cir., 1937, 87 F.2d 451; In re Swartz, 7 Cir., 1942, 130 F.2d 229; Rolax v. Atlantic Coast Line R. Co., 4 Cir., 1951, 186 F.2d 473; Sprague v. Ticonic National Bank, 1939, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184. There is no statutory provision for counsel fees in the present type of case and exceptional circumstances calling for such an award do not appear.

Findings of fact, conclusions of law and a decree in accordance herewith may be presented.