**WILLIAMSON–DICKIE MANUFACTURING COMPANY**

v.

**DAVIS MANUFACTURING COMPANY,**
Solomon Davis, Joseph R. Davis and
David Davis, Appellants.

No. 12237.

United States Court of Appeals
Third Circuit.

Argued Nov. 4, 1957.

Decided Jan. 20, 1958.

Zachary T. Wobensmith, 2d, Philadelphia, Pa. (Maxwell L. Davis, Philadelphia, Pa., on the brief), for appellants.

William E. Schuyler, Jr., Washington, D. C. (Robert B. Frailey, Philadelphia, Pa., Francis C. Browne, Andrew B. Beveridge, Washington, D. C., Paul & Paul, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

Two clothing manufacturers are involved in this appeal which presents for our consideration the issue of whether the mark "Dickie Davis" infringes the trade-mark "Dickie's," and if it does, the subsidiary question of whether the infringer should be required to account to plaintiff for the profits derived from the wrongdoing.

The plaintiff is a Texas corporation which manufacturers men's and boys' clothing, including jackets, slacks, coats, and dungarees. These products have been sold under the trade-mark "Dickie's," which was registered on March 1, 1949, under the provisions of the Lanham Trade-Mark Act, 15 U.S.C.A. § 1051 et seq. Defendants are partners in Philadelphia also in the business of manufacturing boys' clothing, some articles in direct competition with those of plaintiff corporation. In 1951, defendants applied for registration of the mark "Dickie Davis." Plaintiff thereupon opposed the registration, and upon defendants' failure to answer the notice of opposition, default judgment was entered against defendants on June 24, 1952.

Upon advice of counsel, defendants continued to use the mark "Dickie Davis," and plaintiff brought this infringement action. Defendants counterclaimed for cancellation of plaintiff's registration.

The district court found that plaintiff's trade-mark had been infringed, and further that defendants' counterclaim for cancellation of plaintiff's mark should be dismissed.

The counterclaim by defendants for cancellation was based upon two allegations predicated upon Section 2(e) 1 and

3 of the Trade-Mark Act of 1946, 15 U. S.C.A. § 1052(e); namely, that plaintiff's mark "Dickie's," is (1) merely descriptive or deceptively misdescriptive of the goods, and (2) is primarily merely a surname. The objections were adequately answered by the district court. It said first that there is small likelihood that anyone would be deceived by plaintiff's mark into believing that plaintiff manufactured "dickies," a once-popular false shirt front. Next, the district court properly observed that the name "Dickie" is primarily a diminutive of the given name Richard, rather than a family name. Thus, although Dickie was the surname of one of plaintiff's founders, it was not "primarily merely a surname" within the meaning of the statute prohibiting its use as a trade-mark.

Defendants further question the propriety of registering plaintiff's mark in view of the fact that the word "Dickey" or a likeness of it may be found in other registered marks. It should be noted that those marks pointed out by defendants were either expired or applied to women's clothing, certainly not in the same market as the clothing bearing plaintiff's mark. See Restatement, Torts § 717(2) (c) (1938).

■ On the question of the confusing similarity of "Dickie Davis" to "Dickie's," taking into account the fact that defendants manufactured primarily tailored garments, we need add nothing to the excellent discussion of the district court, which follows [149 F.Supp. 854]:

> "In the nature of things, no general principles relating to this fact question of confusing similarity can very well be laid down. The marks that come before the courts from time to time are practically all different, and yet it would not be unhelpful to compare a few cases in which judgments have been based upon findings of the likelihood of confusion between the trademarks involved. For example, 'Diana Deane' was held to infringe 'Diana' (Bunte Bros. v. Standard Chocolates, Inc., D.C., 45 F.Supp. 478),

'C. I. Davids' ' infringed 'Davids' ' (Thaddeus Davids Co. v. Davids, 233 U.S. 461, 34 S.Ct. 648, 58 L. Ed. 1046) 'Ernest Coty' infringed 'Coty' (Coty, Inc., v. Parfums de Grande Luxe, Inc., 2 Cir., 298 F. 865, certiorari denied 266 U.S. 609, 45 S.Ct. 94, 69 L.Ed. 466) * * * and in the Third Circuit 'Dixiana' and 'Dixie Dew' infringed 'Dixie Belle' and 'Dixie Beau' (Century Distilling Co. v. Continental Distilling Co., 3 Cir., 106 F.2d 486). In this court 'New Holland' was held to infringe 'Holland' (Holland Furnace Co. v. New Holland Machine Co., D.C., 24 F.2d 751).

> "There are, of course, some decisions which are not easy to reconcile with the foregoing. However, a great many of the cases cited by the defendants have to do with the effect upon the issue of confusing similarity of the fact that the alleged infringer is manufacturing or selling goods claimed not to be in actual competition with those of the trademark owner. In the present case, there need be little difficulty on that score. The plaintiff and the defendants are both manufacturing boys' clothing. True, the defendants confine their line almost entirely to what they designate 'tailored' garments—a more expensive and better quality of clothing than the play suits, work suits, dungarees, etc., which constitute the larger part of the plaintiff's line. However, there is some overlapping and, even if there were not, it was held in National Dryer Manufacturing Corp. v. National Drying Machinery Co., 3 Cir., 228 F.2d 349, that the trademark owner will be protected in a field so closely allied to his business that he may reasonably be expected to enter into it. If the use of a mark by a school for driving instruction infringes it as used by a seller of automobile parts or an insurance company (Sears, Roebuck and Co. v. Johnson, 3 Cir., 219 F.2d

590) or if hot air hand driers are close enough to large specially constructed driers for laundries and industrial plants (National Dryer Manufacturing Corp. v. National Drying Machinery Co., supra) or if gin competes with bourbon whiskey (Century Distilling Co. v. Continental Distilling Co., supra), certainly the manufacturer of one kind of boys' clothing cannot escape a charge of infringement because the plaintiff is principally engaged in manufacturing another kind."

There can be no serious question about the confusing similarity of defendants' mark to that of the plaintiff, and the issuance of the permanent injunction by the district court was entirely proper. 15 U.S.C. §§ 1114, 1116.

It was further ordered by the district court that "defendants account to plaintiff for that portion of defendants' profit attributable to the infringing use of the trade-mark 'Dickie Davis.'" This accounting is strenuously opposed by defendants, who contend that the equities of this case do not demand that remedy.

■■■ The statutory sanction for ordering an accounting in a suit for infringement of a trade-mark registered under the Act is Section 1117 of Title 15 of the United States Code:

"*  *  * the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114(1) (b) of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."

An accounting for profits is a form of equitable relief, and it does not follow as a matter of course upon the mere showing of an infringement. It will be denied where an injunction satisfies the equities of a case,[1] as for example, where there is a clear showing that no profit was made. Q-Tips v. Johnson & Johnson, 3 Cir., 1953, 206 F.2d 144, certiorari de-

nied, 1953, 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377. But the mere fact that there is no showing by the plaintiff of actual confusion of source will not defeat an accounting. Century Distilling Co. v. Continental Distilling Corp., 3 Cir., 1953, 205 F.2d 140, certiorari denied, 1953, 346 U.S. 900, 74 S.Ct. 226, 98 L.Ed. 400. The infringement having been proved, and the competitive sales of defendants' goods bearing the infringing mark having been shown, the burden is then upon defendants to demonstrate, if they can, that profits were not derived from the infringing use. "The burden is the infringer's to prove that his infringement had no cash value in sales made by him." Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 1942, 316 U.S. 203, 206–207, 62 S.Ct. 1022, 86 L.Ed. 1381; Century Distilling Co. v. Continental Distilling Corp., supra, 205 F.2d 140. Thus the defendants here properly have the burden of proving by an accounting that there was no profit attributable to the use of the infringing trade-mark. It must also be remembered that defendants are not unwitting or innocent infringers. They continued to use their mark even after default judgment in the patent office was entered against them in 1952. They gambled on the advice of counsel that an infringement suit would not be brought against them. They lost. Under the circumstances of this case, we cannot say as a matter of law that an accounting should not have been ordered. Century Distilling Co. v. Continental Distilling Corp., supra, 205 F.2d at page 144. See Restatement, Torts § 747 (1938).

■■ In the absence of fraud on the part of defendants, the district court properly denied plaintiff recovery of litigation expenses. Century Distilling Co. v. Continental Distilling Corp., supra, 205 F.2d at page 149.

Other points raised by defendants do not require discussion.

The judgment of the district court will be affirmed.

---

1. Champion Spark Plug Co. v. Sanders, 1947, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386.