A. SMITH BOWMAN DISTILLERY, INC., Plaintiff,

v.

SCHENLEY DISTILLERS, INC., Defendant.

Civ. A. No. 2199.

United States District Court
D. Delaware,
at Wilmington.
March 29, 1962.

H. James Conaway, Jr., Morford, Young & Conaway, Wilmington, Del., and Henry B. Weaver, Jr., Quinn O'Connell, and Hershel Shanks, Weaver & Glassie, Washington, D. C., for plaintiff.

Aaron Finger, Richards, Layton & Finger, Wilmington, Del., and Milton B. Seasonwein, New York City, for defendant.

LEAHY, Senior District Judge.

■ Plaintiff now seeks, under the general remedial section of the Lanham Act,[2] to recover as costs certain fees, traveling expenses, and disbursements of its attorneys.[3] Only these elements

2. The statute, 15 U.S.C.A. § 1117, provides a successful plaintiff in a trademark action "shall be entitled * * * subject to the principles of equity, to recover * * * the costs of the action." The usual procedure for taxing costs under F.R.Civ.P. 54(d) was not intended to apply in trade-mark actions, or in any suit where there is a specific provision as to costs built into the controlling statute. See Advisory Committee Note to F.R. 54, 28 U.S.C.A. rule 54(d) at 204.

3. The challenged items of plaintiff's proposed bill of costs read as follows:
9. Traveling Expenses and subsistence of Counsel for plaintiff from Washington, D. C.:
(a) To attend oral argument on motion for summary judgment ........................................... $ 150.50
(b) To attend Pre-trial Conference .................... 80.27
(c) To attend trial .................................. 88.03
10. Attorneys' fees for attorneys representing plaintiff ........ 15,000.00
11. Attorneys' disbursements ............................. 516.42

of the proposed bill are here contested. Because of their unusual nature they will be ruled upon by the Court without the usual prior action by the Clerk.[4]

Plaintiff admits that, unlike the general practice in England,[5] American courts tax attorneys' fees against a losing party only in certain special situations, and that the Lanham Act does not specifically provide for such recovery.[6] Plaintiff claims, however, that because of defendant's willful and intentional infringement the present action is an exceptional case in which · the "historic equity jurisdiction of the federal courts" to tax such costs should be exercised. Defendant's reply is double-barrelled and argues that Congress' silence in the statute indicates such expenses were not to be allowed as costs in trademark cases, or, if Congress has not forbidden the taxation of such costs, this case is not an appropriate one for the exercise of the power.

1. The first question is whether there is judicial power to tax counsel fees as costs in trademark cases. Express authority to grant attorneys' fees as an element of costs is found in certain federal statutes. In lawsuits concerning patents,[7] the antitrust laws,[8] copyrights,[9] the Interstate Commerce Act,[10] and the Trust Indenture Act,[11] the courts are specifically empowered to grant counsel fees as an element of costs. The Lanham Act is silent on the subject. But there were several unsuccessful attempts to include such an express provision in its terms.[12] From these circumstances defendant argues Congress intended to prohibit granting counsel fees as costs in trademark actions.

■ However, there exists some "historic" or "inherent" power in a federal court, outside statutory authorization to grant reasonable attorney fees to a prevailing party, albeit such power is limited to exceptional cases. For example, equity may order counsel fees assessed as costs against a fund produced by the attorneys' efforts;[13] or against a party who has some contractual duty to pay;[14] or when it is found that the litigation was entirely groundless and malicious.[15] More specifically, in trademark cases it has even been said that this equitable power to assess such expenses as an element of costs exists "in exceptional cases" despite the statute's silence.[16]

4. See Manley v. Canterbury Corp., D.C. Del., 17 F.R.D. 234, 235; Gotz v. Universal Products Co., D.C.Del., 3 F.R.D 153, 154.

5 See Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157.

6. See the quoted portion of the statute in Note 2, supra, which does not clearly define what may be included as "costs."

7. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C.A. § 285.

8. Section 4, Clayton Act, 15 U.S.C.A. § 15.

9. Section 1, Copyright Act, 17 U.S.C.A. § 116

10. 49 U.S.C.A. § 908.

11. 15 U.S.C.A. § 77www (a)

12. See, e. g., S.Rep. No. 2266, 83d Cong., 2nd Sess. (1954); S. 2540, 84th Cong., 1st Sess. (1955); H.R. 7734, 84th Cong., 1st Sess. (1955). At no point in the congressional history is there any statement that judicial power to tax legal fees as costs did not exist or would be forbidden absent some express statutory provision in the Act.

13. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Central R. R. & Banking Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915; The Court in the Sprague case was of the opinion that the granting of counsel fees and expenses in appropriate situations is part of the historic equity jurisdiction of the federal courts.

14. Kenny v. United States, D.C.N.J., 118 F.Supp. 907, 910 (dictum) and cases there cited.

15. Even-Cut Abrasive Bond & Equipment Corp. v. Cleveland Container Co., 6 Cir., 171 F.2d 873.

16. American Automobile Ass'n v. Speigel, D.C.E.D.N.Y., 128 F.Supp. 794; Apple Growers Ass'n v. Pelletti Fruit Co., D.C. N.D.Cal., 153 F.Supp. 948; see Century Distilling Co. v. Continental Distilling Corp., 3 Cir., 205 F.2d 140, 149 (dictum). The Century Distilling case's holding was

Defendant's argument about the Lanham Act on this point, therefore, must be rejected. Mere silence and inaction by Congress cannot be held to have repealed what has been found to be a well-established judicial power.[17] Even though the Lanham Act may have been intended to be an integrated and comprehensive set of rules for trademark regulation and litigation to the exclusion of all conflicting rules, the retention of discretionary judicial power over the fixing of costs does not seem such a threat of inconsistency that it should by implication be held pre-empted or repealed by the Act. Some more positive action on the part of the legislature is necessary to indicate the Congressional intent to regulate what has long been an orthodox judicial function.

2. As the judicial function to allow attorneys' fees is established, the present question is raised whether counsel fees should be taxed as costs in this case.

(a) This equitable power to assess counsel fees [in the court's discretion] has been sparingly exercised in trademark litigation. Many of the cases cited by plaintiff in support of its claim evidently made the award as an element of damages—either compensatory or punitive—and not really as costs.[18] Although based on a different theory than the instant case, these cases are helpful in illustrating the type of situation found to call for the exercise of the discretionary power to award counsel fees to a successful litigant. The discussion below shows the usual rule under both theories has been to require some fraudulent or malicious conduct on the part of the infringer before counsel fees are awarded, and to deny such recovery when there is only inadvertent or even at times willful infringement.

One of the earlier cases awarding legal fees to a successful party was Aladdin Mfg. Co. v. Mantle Lamp Co.[19] There, plaintiff was allowed over $18,000 in legal expenses as part of his compensatory damages because defendant's infringement was found tainted with fraud, misrepresentation, and deceit. Defendant was found to have palmed off his product as that of plaintiff by actual misrepresentation, to have falsely claimed to dealers and other buyers that his product was the one nationally advertised by plaintiff, and to have engaged in other deceptive practices clearly showing actual fraud. Similarly, in Admiral Corp. v. Penco Inc.,[20] counsel fees were awarded

actually concerned with whether fees might be awarded as an element of *damages* in trademark suits. While it and similar cases, infra, will be helpful in deciding what circumstances justify the exercise of discretion to make an award of fees, they do not stand for the proposition that a federal court has the power to award such fees as an element of costs.

17. It is true that in Richter v. United States, 3 Cir., 1961, 296 F.2d 509, at 511–512, Judge Goodrich stated:

"Congress when it desires to make provisions for attorneys' fees knows perfectly well how to do so, as it has in the Federal Employees' Compensation Act and an abundance of other situations. It has not done so here and we do not think it a proper subject for court action."

However, that case involved an attempt by plaintiffs to recover a fee from the Railroad Retirement Board which had been paid as part of the judgment obtained in a personal injury suit by a railroad employee represented by plaintiffs. Plaintiffs claimed their services had thus benefited the Board and that a fee should be allowed on an implied contract theory under the Tucker Act, 28 U.S.C. § 1346(a)(2). The quote from the Court's opinion, supra, then refers to the lack of authority in the Tucker Act to permit such a claim against the Government and not to the general equity power to assess counsel fees against one or another party to a private suit as is the case here.

18. See, e. g., Aladdin Mfg. Co. v. Mantle Lamp Co., 7 Cir., 116 F.2d 708. Because most of the published statements in the field of legal fees deal with the question in an anti-climatic line or two at the end of an opinion on the merits of the case, it is sometimes hard to discern from the judicial articulation what actually is the rationale behind the award, *i. e.*, whether it is an element of costs or damages.

19. Ibid.

20. D.C.W.D.N.Y., 106 F.Supp. 1015, aff'd, 2 Cir., 203 F.2d 517.

plaintiff because of defendant's flagrant conduct, which included palming-off, false advertising, and misrepresentation. The court characterized defendant's actions as "a shabby plan to foist on customers by subtle means * * * its Admiral marked vacuum cleaners."

The deceitful conduct of a defendant led to a similar award of counsel fees in Maternally Yours Inc. v. Your Maternity Shop, Inc.[21] There defendant opened a shop close by plaintiff's shop with a similar name, dealing in the same specialty items. The defendant used nearly identical signs, labels, and boxes in its shop, obtained obviously similar telephone listings, and conducted a campaign of deceptive advertising. In National Lead Co. v. Wolfe,[22] the award of fees came in a case where there was a widespread campaign of deceptive advertising by defendants which the court found to constitute fraud and palming-off. Attorney fees were again awarded in the same circuit in National Van Lines v. Dean,[23] where defendant, while still employed as an agent of plaintiff's moving company, developed a tradename and shield design for use on his own trucks when he later established his own business. The court said: "The inference is compelling that appellee intentionally sought to * * * deceive * * * customers and * * * accomplish a transfer of business * * * from principal to erstwhile agent." [24]

And a defendant's conduct in Keller Products Inc. v. Rubber Linings Corp.[25] was found to justify awarding counsel fees of $1500 as part of compensatory damages, even though not extreme enough to justify exemplary damages in the suit itself. There was no finding of actual fraud or misrepresentation, but the label and package design of defendant was nearly identical to plaintiffs and actual confusion among customers to plaintiff's damage was found.[26] Even in patent cases where there is express statutory authority to award counsel fees as costs in "exceptional cases" [27] such costs have been denied absent some showing of "bad faith, * * * imposition," or "unfairness." [28]

(b) The other side of the coin is illustrated by cases like General Motors Corp. v. Circulators & Devices Mfg. Corp.,[29] Century Distilling Co. v. Conti-

21. 2 Cir., 234 F.2d 538.

22. 9 Cir., 223 F.2d 195, on remand, D.C. N.D.Cal., 156 F.Supp. 883, aff'd, 9 Cir., 272 F.2d 867, cert. denied, 362 U.S. 950, 80 S.Ct. 860, 4 L.Ed.2d 868.

23. 9 Cir., 237 F.2d 688.

24. Id. at 692.

25. 7 Cir., 213 F.2d 382.

26. Several other cases cited by plaintiff as authority for taxing counsel fees against a losing party as costs are of no real help here. Capehart v. Lund, 14 Alaska 11, 107 F.Supp. 10, presents only a half-page opinion concluding with one line, "An attorney's fee of $500 is allowed." As suggested in Note 18, supra, it is impossible to tell the basis of the award. There are no facts set out to show the character of the infringement.

In Taussig v. Wellington Fund Inc., D. C.Del., 187 F.Supp. 179, attorneys' fees were allowed as an element of damages, but Chief Judge Wright specifically stated at p. 223 that it was the nature of the action—a derivative suit by a minority shareholder on behalf of a corporation—that caused him to exercise his discretionary power to grant counsel fees compensating the shareholder for his successful efforts.

27. See Note 7, supra.

28. In Tinnerman Products Inc. v. George K. Garrett Co., D.C.E.D.Pa., 1962, 202 F.Supp. 360, a defendant sought attorneys fees under this section against a plaintiff whose patents had been held invalid in the litigation and the license agreements under them therefore violative of the antitrust laws. The court, however, found plaintiff had the right to presume the patents valid and had, in good faith entered into the license agreements under them with no intent to violate the antitrust laws although "subsequent events" did establish a violation. None of plaintiff's actions were found "vexatious" or "malicious" so the application was denied. See also, Stelma, Inc. v. Bridge Electronics Co., 3 Cir., 1962, 300 F.2d 761 ("harassment").

29. D.C.S.D.N.Y., 67 F.Supp. 745.

nental Distilling Corp.,[30] and Williamson-Dickie Mfg. Co. v. Davis Mfg. Co.,[31] in all of which an application for legal expenses was denied as either costs or damages, or both.[32]

For example, in the General Motors case, supra, a "deliberate" use of a mark infringing plaintiff's "Frigidaire" symbol was found, but the court found no fraud or other circumstances in defendant's conduct that justified taxing counsel fees against him.[33]

Judge Kirkpatrick clearly stated his reasons for denying an award of attorneys' fees in the Williamson-Dickie case and wrote:

"I have not included in the foregoing an order that the defendants pay the plaintiff's counsel fees. * * Whatever the inherent power of a court of equity, apart from statute, to award attorneys' fees as costs, there is no occasion in the present case to exercise such power. There is no evidence indicating bad faith or vexatious tactics on the part of defendants." [34]

Thus, attorney's fees were denied, even though, as noted on appeal, defendants were not "unwitting and innocent infringers." [35] In the Century case, Judge Kirkpatrick again took a similar position and said the power to tax attorneys' fees:

" * * * is not to be exercised except in the most exceptional circumstances. * * * [A]lthough plaintiff's conduct was wilful in the sense that it was not innocent or inadvertent, it was not * * * fraudulent. There [was] no circumstances of palming off or express malice, and no deliberate attempt to destroy the defendant's business. The worst that can be said about [defendant's] conduct is that it mistook its legal rights and stubbornly clung to its ill-advised course of conduct." [36]

The opinion on the merits in the case at bar [37] relied heavily on the strikingly similar case of Q-Tips Inc. v. Johnson & Johnson Inc.,[38] in which defendant had chosen a name clearly similar to plaintiff's established mark from a list of dozens of other arbitrary and fanciful possibilities, indicating a deliberate and intentional attempt to capitalize on plaintiff's good will. The lack of any fraudulent conduct by defendant or proof of any actual damage to plaintiff's business was, however, said by Judge Goodrich to preclude any remedy beyond injunction and cancellation.

(c) The instant situation is clearly much closer to this latter line of cases which deny counsel fees than to those other cases which grant such an award. Here, it is true, defendant's choice of marks was found to be an intentional and deliberate attempt to come as close as possible to plaintiff's highly

30. D.C.E.D.Pa., 102 F.Supp. 39, aff'd, 3 Cir., 205 F.2d 140, cert. denied, 346 U.S. 900, 74 S.Ct. 226, 98 L.Ed. 400.

31. D.C.E.D.Pa., 149 F.Supp. 852, aff'd, 3 Cir., 251 F.2d 924.

32. See also, Fancee Free Mfg. Co. v. Fancy Free Fashions, Inc., D.C.S.D.N.Y., 148 F. Supp. 825 (no "fraud" thus no attorneys' fees); Coca-Cola Co. v. Dixie-Cola Labs. Inc., D.C.Md., 57 F.Supp. 911, modified, 4 Cir., 155 F.2d 59, cert. denied, 329 U.S. 773, 67 S.Ct. 192, 91 L.Ed. 665; Borg-Warner Corp. v. York-Shirpley, Inc., 7 Cir., 293 F.2d 88.

33. Cf., Perry Knitting Co. v. Meyers, D.C. S.D.N.Y., 120 F.Supp. 880, where the same District Judge awarded counsel fees (again it is unclear whether as damages or costs) against a defendant who "deliberately" chose an infringing mark, but who also continued sales under the name while plaintiff was bringing an opposition proceeding in the Patent Office, and even continued its use after that proceeding resulted in a denial of registration.

34. 149 F.Supp. 852, 855.

35. 251 F.2d 924, 927.

36. 102 F.Supp. 39, 41. See also, Meat Industries Suppliers, Inc. v. The Kroger Co., D.C.N.D.Ill., 130 USPQ 434.

37. D.C.Del., 198 F.Supp. 822.

38. D.C.N.J., 108 F.Supp. 845, aff'd, 3 Cir., 1953, 206 F.2d 144.

popular name. However, it is clear there was no intention on defendant's part to illegally use a name that infringed plaintiff's protected marks. The subsequent finding of invalidity of defendant's marks cannot be used to retroactively taint his original action.[39]

Nor did defendant's intent or conduct encompass fraud, malice, or deception. There was no attempt to copy the label, packaging or physical appearance of plaintiff's product. There was no deceptive advertising or active misrepresentation to customers. There was no great rush to flood the market with the product and capitalize on the confusion.

On the contrary, defendant's conduct negates both charges since it shows defendant intended to use the marks commercially only if they were found noninfringing. The marks had been granted registration without opposition. No sales were made under these labels after plaintiff objected to the use of the marks.[40] Defendant has fairly participated in the current litigation to decide the validity of the marks without undue obstruction or delay.[41]

■ 3. The conclusion to be drawn from the cited cases is that before the discretionary power to tax attorney's fees as an element of costs in trademark infringement cases will be exercised, there must be some showing of fraudulent or malicious conduct on the part of the infringer beyond a mere deliberate attempt to find a mark which will contain some of the commercial magic of a successful tradename and yet still be legal and uninfringing. Plaintiff has made no such showing here. It is unnecessary to decide that a similar showing must be made for such expenses to be awarded as an element of either compensatory or punitive damages, because that question was not presented by either the pleadings or the proofs.

Plaintiff's application for items 9, 10 and 11 of its proposed bill of costs is denied.

An order may be submitted.

---

39. See Tinnerman Products, Inc. v. George K. Garrett Co., D.C.E.D.Pa., 202 F.Supp. 360.

40. Only four cases of bourbon, in fact, were ever sold by defendant under the offending marks and these in order to qualify for registration under the Lanham Act. This distinguishes the instant case from Leggett & Co. v. Premier Packing Co., D.C.Mass., 140 F.Supp. 328, where defendant's sales continued long after notification of the claim of infringement.

41. See Williamson-Dickie Mfg. Co. v. Davis Mfg. Co., D.C.E.D.Pa., 149 F.Supp. 852, 855; Tinnerman Products, Inc. v. George K. Garrett Co., D.C.E.D.Pa., 202 F.Supp. 360.